David M. PRUETT, Petitioner–Appellant,

v.

Charles THOMPSON, Respondent–Appellee.

No. 92–4002.

United States Court of Appeals, Fourth Circuit.

Argued June 17, 1992.

Decided May 25, 1993.

Russell Frank Canan, Washington, DC, argued (Curt S. Hansen, on brief), for appellant.

Robert H. Anderson, III, Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, argued (Mary Sue Terry, Atty. Gen., on brief), for appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

## OPINION

WIDENER, Circuit Judge:

David Mark Pruett attacks a Virginia state court judgment sentencing him to death. The United States District Court for the Eastern District of Virginia denied his petition for a writ of habeas corpus. We affirm.

### I.

On February 12, 1985, Pruett went to the home of his friends Richard and Wilma Harvey.[1] Richard Harvey was out of town, and Pruett stopped in, ostensibly to check on Mrs. Harvey. Pruett chatted with Mrs. Harvey for several minutes. When the paperboy came to the door to collect, Mrs. Harvey paid him from a grey cashbox. Upon seeing Mrs. Harvey take money from the cashbox, Pruett formed the intent to rob Mrs. Harvey. Mrs. Harvey and Pruett continued to talk until she said that she needed to get ready to go to church. Pruett asked for permission to use the bathroom.

While in the bathroom, Pruett decided that he "wanted some sex" and "told himself 'well go do it.'" He went upstairs and told Mrs. Harvey that he "wanted some sex." At first Mrs. Harvey refused, but Pruett drew a knife that he had brought with him and forced her to submit. After he raped Mrs. Harvey, Pruett bound her hands and feet and used a sock to tie a gag over her mouth. Pruett then stabbed Mrs. Harvey several times and cut her throat open. The medical examiner counted twenty-nine stab wounds in all, several of which would have been fatal alone. The Supreme Court of Virginia did not articulate a reason for the initial stabbing, but found that Pruett cut Mrs. Harvey's throat when she tried to kick him while he was stabbing her. See 351 S.E.2d at 13.

After he killed Mrs. Harvey, Pruett ransacked the house looking for money. He took all the money that he could find, including the money in the grey cashbox. He then disposed of his blood-soaked clothes and the knife. Mrs. Harvey's body was discovered on her bed by relatives the next day.

On February 14 the police interviewed Pruett twice. During the first interview at 1:00 a.m., Pruett admitted visiting Mrs. Harvey, but denied any knowledge about the killing. In response to a question about whether he had any idea of who might want to kill Mrs. Harvey, Pruett stated, "I can't understand it. I, I can't feel that anybody could." He also said that he was more anxious to find the killer than the police were and that he would take a polygraph test. After the police discovered that Pruett's fingerprints had been found on the headboard of Mrs. Harvey's bed and on her eyeglasses, they again questioned Pruett. Pruett confessed to robbing, raping, and killing Mrs. Harvey, and he also confessed to robbing and killing Debra McInnis in 1975, a friend he knew through working at Kentucky Fried Chicken.[2]

Pruett was charged by indictments with the capital murder of Mrs. Harvey during the commission of, or subsequent to, rape; rape of Mrs. Harvey; and robbery of Mrs. Harvey. A jury convicted Pruett on all three charges and fixed his punishment for rape at life imprisonment and for robbery at 75 years in prison. The same jury then heard evidence in aggravation and mitigation of the murder charge and returned a sentence of death. On March 26, 1986, the trial court imposed the sentences fixed by the jury. The Virginia Supreme Court affirmed the judgments and sentence of death. *Pruett v. Commonwealth*, 232 Va. 266, 351 S.E.2d 1

---

1. These facts are taken from *Pruett v. Commonwealth*, 232 Va. 266, 351 S.E.2d 1 (1986), cert. denied, 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 706 (1987), and Pruett's confession, and they are not materially in dispute.

2. Pruett was convicted of the murder of Mrs. McInnis in a separate nonjury trial, for which he received a life sentence under the noncapital murder statute, Va.Code Ann. § 18.2–32. The McInnis murder was also a brutal stabbing, with the motive apparently being robbery.

(1986), *cert. denied*, 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 706 (1987). The court found that the death penalty was appropriate because the crime fit both the "vileness" prong and the "future dangerousness" prong of Virginia's capital murder statute. 351 S.E.2d at 12–14; see also Va.Code Ann. § 19.2–264.2 (1977).

Pruett sought post-conviction relief in the Circuit Court of the City of Virginia Beach, Virginia by filing a petition for a writ of habeas corpus. On June 14, 1988 the circuit court dismissed certain counts in the petition and ordered an evidentiary hearing on the remaining claims. The evidentiary hearing was held on October 18 and 19, 1988. The circuit court heard testimony from Dr. Tsao, the psychiatrist who had evaluated Pruett; Dr. Brown, a forensic psychologist; Mr. Stallings, the lawyer who represented Pruett at trial and on direct appeal; Dr. Fisher, another forensic psychologist; Pruett's mother and father; Mr. Phillips, the prosecutor at Pruett's trial; Mr. Dougherty, an associate at Mr. Stallings's firm who worked on Pruett's case and trial; Miss Weise, a nurse and medical administrator at the Virginia Beach Correctional Center; and Mr. Costigan, the psychiatric social worker at VBCC. The circuit court entered findings of fact and conclusions of law on March 6, 1989 and dismissed the petition in full by final order of March 27, 1989. On November 16, 1989, the Supreme Court of Virginia refused a petition for appeal. On May 14, 1990, the United States Supreme Court denied certiorari. *Pruett v. Thompson*, 495 U.S. 940, 110 S.Ct. 2194, 109 L.Ed.2d 522 (1990).

Pruett filed his present action in the United States District Court for the Eastern District of Virginia on November 29, 1990. The petition contained a request for an evidentiary hearing. On August 19, 1991, the district court, without a hearing, entered its order granting the respondent's motion to dismiss the petition. *Pruett v. Thompson*, 771 F.Supp. 1428 (E.D.Va.1991) (mem.). Pruett appealed the final judgment and order of the district court on February 11, 1992.

In this appeal, Pruett raises five grounds: (1) The state trial court erred in not instructing the jury on the lesser-included offense of first degree murder during the guilt phase of the trial; (2) prosecutorial misconduct infected the trial and sentencing; (3) the jury instructions given at the penalty phase were inadequate; (4) Pruett received ineffective assistance of trial and appellate counsel; and (5) the district court abused its discretion under 28 U.S.C. § 2254 by failing to grant Pruett an evidentiary hearing on his habeas petition, and specifically, on the ineffective assistance of counsel claim. We will address each of Pruett's contentions in turn.

## II.

■ Three of Pruett's assignments of error—the trial court's refusal to grant Pruett's request to instruct the jury on the lesser-included offense of first degree murder, prosecutorial misconduct at trial and at sentencing, and the adequacy of the penalty phase instructions—were procedurally defaulted. See *Pruett v. Thompson*, No. 890908 (Va. Nov. 16, 1989). In holding that each of these claims was precluded because the same was not raised either at trial or on direct review, the Virginia Supreme Court relied on *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975), which holds that non-jurisdictional challenges to a conviction may not be raised in a habeas corpus proceeding if they were not asserted at trial and upon direct appeal.

■ At trial Pruett offered an instruction on the lesser-included offense of first degree murder excluding the felony-murder theory of rape, necessarily proceeding on the theory that there had been consensual intercourse. The trial court refused the instruction. There simply was no evidence to support the giving of such an instruction and Pruett did not appeal the refusal to the Virginia Supreme Court. So that question is precluded from consideration here, having been precluded from further collateral consideration in Virginia, even if raised collaterally, by the rule of *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). Pruett has not exhausted state remedies. This subject is mentioned in more detail in Part III of this opinion.

On direct appeal with respect to prosecutorial misconduct, Pruett raised only the question of the Commonwealth's Attorney's argument that Pruett's attorney had conceded guilt, which the Virginia Court held to be without merit. 351 S.E.2d at 10–11; *Pruett v. Thompson*, No. 890908, Petition for Appeal at 30–31 (Va. Nov. 16, 1989). Pruett does not pursue that issue in this court on the same theory,[3] however. He now, in his brief here, Brief of Appellant at 32–37, pursues an extensive list of claimed prosecutorial misconduct which was not presented to the Supreme Court of Virginia on direct appeal and so was procedurally barred from consideration by the Virginia courts on collateral review, even if there presented, by the rule of *Parrigan*. The claims on the present list have been procedurally defaulted for failure to exhaust state remedies, having been procedurally defaulted under state law. While the district court did consider the claim with respect to the Commonwealth's Attorney's argument that Pruett's attorney had admitted guilt and decided it was without merit for the reasons given by the Virginia Supreme Court, 771 F.Supp. at 1445, the question was not raised here and we do not consider it. The merits of the other claims of prosecutorial misconduct have been procedurally defaulted as we have set forth and we do not directly consider them also.[4]

On direct appeal, the adequacy of the penalty phase instructions was raised only so far as the trial court had refused to instruct the jury that if the jury could not unanimously agree on the death penalty, the court must impose a life sentence under Va.Code Ann. § 19.2–264.4(E). The Virginia Supreme Court held that this should not have been the subject of an instruction because it was a procedural matter and it would have been an open invitation for the jury to avoid its responsibility and to disagree. That question also is not raised in the same context before us. Pruett's claim here is that "[t]he jury that sentenced petitioner to death was never instructed that it must consider the mitigating evidence before imposing the sentence of death." Brief of Appellant at 13. The brief continues, Brief of Appellant at 13–19, in similar vein that "[i]t is not enough for the defendant to be able to present mitigating evidence; the sentencer is also required to consider it" and the jury must be "... required to make an individualized sentencing determination based on evidence submitted at the penalty phase." Brief of Appellant at 14. These theories were not presented on direct appeal and so were held by the Virginia Court to have been procedurally defaulted under *Parrigan*. Having been defaulted under Virginia law, they are similarly defaulted in the federal courts for a failure to exhaust state remedies. So we do not directly consider on the merits the claimed deficiency in jury instructions at the penalty phase.

### III.

Pruett argues that we nonetheless should address his lesser-included offense instruction claim because he is entitled to relief

---

3. Even if Pruett's mere allusion in his brief to ¶ 96 of his federal habeas petition is a sufficient raising of the question, we deny the claim as without merit for the same reasons given by the Virginia Supreme Court, 351 S.E.2d at 10–11, and the district court, 771 F.Supp. at 1445. Paragraph 96 states in full: "Defense counsel also objected to the Commonwealth arguing that he conceded guilt at *voir dire*. (App. 1391). This, too, was overruled. (App. 1393)."

4. The district court apparently held, and, if so, correctly, and Pruett concedes in his brief that the district court so held, Brief of Appellant at 33, that the prosecutorial misconduct claim relating to the offering of evidence relating to Mrs. Harvey's character was procedurally defaulted. 771 F.Supp. at 1445.

Even if the opinion of the district court is construed as reaching whatever merits of the question the petition for appeal to the state Supreme Court presented, it correctly decided that *Payne v. Tennessee*, —— U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), had overruled the cases of *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), which were the only cases depended upon by Pruett in his appeal in the state habeas case. No consideration of any of the papers in the present case can lead to the conclusion that the matter of prosecutorial error in the introduction of evidence relative to the character of Mrs. Harvey was presented to the Virginia Supreme Court in any context other than as a penalty phase error. See *Booth, supra; Gathers, supra.*

from the procedural bar under either *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or *Sawyer v. Whitley*, —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). We first discuss the relevant Virginia statutes and proceedings in this case in Part A, *infra*. We also discuss Pruett's claimed constitutional error in that section. In Part B, *infra*, we examine Pruett's claims under the standards and the theories he proffers.

### A.

To understand Pruett's claim, it is important to understand the Virginia murder statutes and the context in which the claim was raised in all of the proceedings below.

 Virginia's capital murder statute provides:

The following offenses shall constitute capital murder, punishable as a Class 1 felony

. . .

(e) The willful, deliberate and premeditated killing of a person during the commission of, or subsequent to, rape.

Va.Code Ann. § 18.2–31 (1982). Virginia's first degree murder statute provides:

Murder, other than capital murder . . . by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit . . . rape . . . is murder of the first degree, punishable as a Class 2 felony.

Va.Code Ann. § 18.2–32. Thus, in Virginia three elements are necessary to prove capital murder: (1) a murder; (2) during the course of another statutorily specified crime (here, rape); and (3) premeditation or deliberation. If either the premeditation element or the prerequisite crime is missing, the defendant is guilty of first degree murder. If both are missing, the defendant is guilty of second degree murder. Va.Code § 18.2–32; see 9B *Michie's Jurisprudence of Virginia and West Virginia, Homicide,* § 20 (1984).

At trial, Pruett's attorney, Moody Stallings, proffered an instruction on first degree murder that read, in pertinent part:

The defendant is charged with the crime of first degree murder. The Common-

wealth must prove beyond a reasonable doubt the following elements of that crime: (1) That the defendant killed Wilma Harvey; (2) That the killing was malicious; and (3) That the killing was willful, deliberate and premeditated.

Thus, it is clear that the instruction was offered on the theory that the jury might find that the rape element of the capital murder crime was missing. The trial court refused to give the instruction because it found the jury might find it confusing. The issue was not raised on appeal to the Virginia Supreme Court.

In Pruett's state habeas petition, he asserted that the denial of the instruction was improper because there was evidence to support his contention that Mrs. Harvey was not raped. State Habeas Petition at ¶¶ 44–50. He also asserted that it was ineffective assistance of appellate counsel for Stallings to fail to include the denial of the instruction in his assignments of error to the Virginia Supreme Court. Amended State Habeas Petition at ¶ 220. The state habeas court held that Pruett's claim was procedurally barred as to the instruction and found no merit in the ineffective assistance of counsel claim. *Pruett v. Thompson*, No. CL 87–2070 (Cir.Ct. of Va. Beach, June 14, 1988).

Pruett appealed to the Virginia Supreme Court. There, Pruett switched his reasoning as to why the denial of the instruction was error. He made the assertion there that he "may not have had the capacity to premeditate and deliberate" and therefore was entitled to an instruction on first degree murder. Petitioner's Brief at 14–16, (App. 1215–17), *Pruett v. Thompson*, No. 890908 (Va. Nov. 16, 1989). Pruett also argued that Stallings was ineffective because he failed to develop psychiatric evidence that Pruett lacked the capacity to premeditate and deliberate. *Id.* at 24–25 (App. 1225–26). No mention was made of the claim of no rape he had asserted earlier in the Circuit Court of the City of Virginia Beach.

The Supreme Court of Virginia held that the lesser-included offense claim was procedurally barred and that there was no merit to the ineffective assistance of counsel claims.

*Pruett v. Thompson,* No. 890908 (Va. November 16, 1989).

Pruett next turned to the United States District Court for the Eastern District of Virginia. In his habeas petition there, he argued once again that he was entitled to the lesser-included offense instruction on a lack of premeditation theory. Petition for Writ of Habeas Corpus at ¶¶ 55–63, *Pruett v. Thompson,* 771 F.Supp. 1428 (E.D.Va.1991). He argued that there was ample evidence to support his theory because

[t]he frenzied nature of the killing itself could have led a reasonable juror to conclude that the killing was not deliberate and premeditated. In addition, there is evidence to support further mental health evaluation of the petitioner on the question of whether he was able to, or did in fact premeditate and deliberate the killing of Wilma Harvey.

*Id.* at ¶ 60. Pruett further asserted that his procedural default of this claim was the result of "ineffective assistance of trial and appellate counsel." *Id.* at ¶ 63. In analyzing Pruett's claim, the district court stated:

His claim before this Court reflects one first made in state court on collateral *appeal*—that the nature of the killing and the nature of the petitioner would have supported finding that petitioner did not or could not have premeditated and deliberated over the killing.

It is not surprising that the Virginia Supreme Court found this entire claim procedurally defaulted under *Parrigan.* Although the ineffective assistance of counsel claim may have served as an allegation of cause and prejudice for failure to raise the "no rape or force" argument on direct appeal, petitioner has defaulted on the current [lack of premeditation claim] because it was not even raised in the state habeas petition.

771 F.Supp. at 1443. The district court went on, however, to analyze Pruett's claim under the actual innocence exception to the procedural default rules and found no merit in Pruett's contentions.

Pruett now argues in this court that the lesser-included offense instruction should have been given on both of his theories: that there was no rape and that there was no premeditation. Brief of Appellant at 19. Pruett relies on statements from his confession to show that he lacked premeditation, and he relies on medical evidence to support his theory that there was no rape. He also argues that it was ineffective assistance of counsel for Stallings to fail to raise this ground in the direct appeal to the Virginia Supreme Court. Brief of Appellant at 22.

■ Any superficial arguability of this claim, however, is only that. As discussed previously, Pruett theoretically could have been guilty of first degree murder if the jury had found that he had killed Mrs. Harvey with deliberation and premeditation but that he had not killed her during the commission of a rape. Further, Pruett could have been guilty of first degree murder if the jury had found a rape and a murder, but no premeditation. This is because under Virginia law the offense of first degree murder during the course of a rape does not require premeditation or intent, but it does require malice. *Wooden v. Commonwealth,* 222 Va. 758, 284 S.E.2d 811, 814 (1981). Malice may be inferred, however, from the rape. See *Wooden,* 284 S.E.2d at 814. Pruett argues that the jury should have been instructed on first degree murder because the evidence showed that he committed a serious offense, the rape and murder of Mrs. Harvey, but did not show evidence of premeditation. The trial court's failure to instruct the jury on first degree murder, he argues, gave the jury two choices: acquit him or convict him of capital murder. Because the evidence showed he committed a serious offense, Pruett submits that they chose to convict him. This argument is very deftly made, taking advantage of the fact that the Virginia Supreme Court did not, on direct review, explicitly find the premeditation element. The argument goes that this is a case under *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), but the argument omits that lack of premeditation and deliberation was not argued in the Virginia Supreme Court.

**B.**

■ A closer look reveals the weakness in Pruett's argument which ignores the pro-

ceedings in this case. Because some of Pruett's claims are procedurally defaulted for one or more reasons, see Part II, *supra*, there are only two instances in which we should review Pruett's claim: if he can show that there was cause for and prejudice from the procedural default of his claim, see *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or that he is entitled to review because the failure to give the instruction was a constitutional violation that resulted in his conviction for capital murder when he is "actually innocent" of the crime for which the death penalty was imposed, see *Sawyer v. Whitley*, ⸺ U.S. ⸺, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). In an abundance of caution, we will also review his lesser-included offense claim under both the lack of rape and lack of premeditation theories.

### Ineffective Assistance of Counsel

Pruett argues that he is entitled to review of his lesser-included offense instruction claim because he claims his attorney made a mistake in failing to appeal the trial court's decision on the instruction which was of such magnitude as to constitute ineffective assistance of counsel within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which meets the "cause and prejudice" standard of *Murray v. Carrier*. It is important to remember that, despite all of Pruett's attempts to argue the merits of his *Beck* claim on the premeditation ground, the instruction denied and from which no appeal was taken was premised on the lack of the rape element, not lack of the premeditation element. However, we also will examine Pruett's claim as one that Stallings should have discovered and argued the premeditation ground.

██ Under the *Strickland v. Washington* standard, to prove ineffective assistance of counsel Pruett must show that Stallings's performance was deficient and that Stallings's errors were "so serious as to deprive [Pruett] of a fair trial." 466 U.S. at 687, 104 S.Ct. at 2064. An appellate court's review of "counsel's performance must be highly deferential," 466 U.S. at 689, 104 S.Ct. at 2065, and the goal of judicial review "is not to

grade counsel's performance," 466 U.S. at 697, 104 S.Ct. at 2069. Rather, we must decide whether Stallings's performance "fell below an objective standard of reasonableness," 466 U.S. at 688, 104 S.Ct. at 2064, giving proper weight to whether his decisions reflected a "sound trial strategy," 466 U.S. at 689, 104 S.Ct. at 2065.

### Failure to Appeal the Refused Lack of Rape Instruction

██ A lawyer's performance is entitled to a strong presumption of reasonableness. *Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 764 (1990). In deciding which issues to raise on appeal, Stallings is entitled to a presumption that he decided which issues were most likely to afford relief on appeal. A decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy. See 881 F.2d at 124. Stallings felt that his best chance on appeal was to raise a question about Pruett's mental condition and to appeal the trial court's denial of his request for a second psychiatrist.

██ Further, Stallings was no doubt aware of the Virginia cases which hold that a capital murder defendant is not entitled to an instruction on first degree murder when there is no evidence to support it. See, e.g., *Briley v. Commonwealth*, 221 Va. 532, 273 S.E.2d 48 (1980), *cert. denied*, 451 U.S. 1031, 101 S.Ct. 3022, 69 L.Ed.2d 400 (1981). Here, the record is completely devoid of any evidence to support the contention that Mrs. Harvey was not raped. Pruett relies on a small part of his confession that he says supports his claim that he and Mrs. Harvey engaged in consensual intercourse. That portion of the confession reads:

> [Pruett]: I told Wilma, she said she had to go get ready to go and I went to the bathroom and the next thing I knew I was up in her bathroom. I said that I was, I wanted some sex. I had some sex with her and then I killed her.

This answer was given right after Pruett admitted that he was the perpetrator and was explaining in a broad way what occurred

at the Harveys' home. However, when asked to give the police more detail, Pruett stated unequivocally that he raped Mrs. Harvey.

[Q]: Allright. You said you did have sex with her?

[A]: Yes.

[Q]: Before or after you stabbed her?

[A]: Before.

[Q]: Okay. Before or after you tied her up?

[A]: Before.

[Q]: Okay. Was the sex voluntary?

[A]: No.

[Q]: You had to force her?

[A]: Yea.

[Q]: How did you have to force her?

[A]: By asking her. I mean, ah, with the knife.

[Q]: With the knife.

[A]: Yea. So then she said no problem.

[Q]: How did you, how did you force her with the knife?

[A]: I don't know.

[Q]: Did you threaten her? Did you, ah . . .

[A]: I said, well, yea, I said I want some sex. I want some sex and, ah, then she said, okay and then I put the knife down.

[Q]: Okay. So you didn't have the knife when you were having sex with her then?

[A]: No.

Read in the best possible light for Pruett, his argument boils down to an assertion that Mrs. Harvey consented to sex after he asked her at knife point. Hardly consensual intercourse by any standard. The most favorable reading of Pruett's confession still provides nothing other than overwhelming and uncontradicted evidence that Mrs. Harvey was raped.

We find no merit in Pruett's contention that his lawyer was ineffective because he failed to appeal the denial of a first degree murder instruction on the basis that he could

have committed a premeditated killing of Mrs. Harvey without raping her. There simply was no evidence to support such an instruction. There was no error, constitutional or otherwise, in the trial judge's refusal to give the instruction, so it is not ineffective assistance of counsel for an attorney not to appeal a patently correct ruling. We also note that the jury was instructed on the elements of rape, specifically found Pruett guilty of rape, and sentenced him to a seventy-five year prison term for that offense.

### Failure to Offer a Lesser–Included Offense on Deliberation and Premeditation Instruction

Pruett makes the oblique assertion in his brief that Stallings's failure to ask for a lesser-included offense instruction on the basis of lack of premeditation constituted ineffective assistance of counsel. This is the first time Pruett has raised such a claim.[5]

■■■ We note at the outset that this claim of Pruett should be denied because he failed to exhaust it in the Virginia courts. See 28 U.S.C. § 2254(b); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). New theories and claims may not be inserted into a case every time it reaches a new court. See *Crowell v. Zahradnick,* 571 F.2d 1257 (4th Cir.1977), *cert. denied,* 439 U.S. 956, 99 S.Ct. 357, 58 L.Ed.2d 348 (1978). The alleged constitutional error was never raised or considered by any court before this one, and we hold that the claim should be dismissed for failure to exhaust. See *Crowell,* 571 F.2d at 1258. Further, we note that if Pruett's claim had been presented to the Virginia courts on collateral review, it would have been barred under the rule of *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975), because he did not raise this claim on direct appeal. Therefore, the very claim on which Pruett relies to establish cause and prejudice for the procedural default of his claim with respect to lack of premeditation under *Beck* is itself subject to

5. Before the Virginia Supreme Court on habeas review Pruett argued that if Stallings had properly investigated his psychiatric state, he would have discovered that Pruett lacked the mental capacity necessary to form premeditation. As we conclude at Part IV, *infra,* Stallings's investigation was objectively reasonable.

dismissal for failure to exhaust and, as well, would be procedurally defaulted under state law.

*Murray v. Carrier,* 477 U.S. 478, 489, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986), holds that "*Rose v. Lundy,* 455 U.S. 509, 518 [102 S.Ct. 1198, 1203, 71 L.Ed.2d 379] (1982), generally requires that a claim of ineffective assistance be presented to the state court as an independent claim before it may be used to establish cause for a procedural default." We follow that rule in this case. There has been no presentation to the Virginia courts of this ineffective assistance of counsel claim, so it may not be used to establish cause for a procedural default in this case.

While the question is not before us, it is not out of place to observe that even had the claim not been procedurally defaulted, it would have required examination of Stallings's tactics, in view of the overwhelming evidence of guilt, in conducting the trial principally as an appeal to the jury in the sentencing phase. The record does not suggest any merit to that claim.

### The Actual Innocence Claim

■ A petitioner who has failed to meet the *Murray v. Carrier* cause and prejudice standard may still have his defaulted habeas claims reviewed if he can show that he is actually innocent of the crime for which the death penalty was imposed. *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). "[T]o show 'actual innocence' one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2515.

### The Offered Lesser–Included Offense Instruction Which Omitted Any Reference To Rape

First, we have an insurmountable difficulty in finding the requisite constitutional error. To require the trial judge to give the lesser-included offense instruction as offered would be simply inconsistent with both the indict-

ments and the facts established by the record. If Pruett had received the instruction he sought, been convicted under it instead of the capital murder statute, but still found guilty of rape, as he was, he would have been guilty of all of the elements of capital murder, but just not convicted of it, a logical inconsistency too great to overcome. Even assuming for argument that the trial court committed constitutional error by failing to instruct the jury on the lesser-included offense at trial, see *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); cf. *Briley v. Bass,* 742 F.2d 155 (4th Cir.) (stating that no instruction is required when there is no support in the evidence for the lesser-included offense), *cert. denied,* 469 U.S. 893, 105 S.Ct. 270, 83 L.Ed.2d 206 (1984), the result would be the same.

We decide without the slightest hesitation that such a claim does not pass the *Sawyer* reasonable juror standard. Here, there was abundant evidence from which even the most cautious juror could only have found that Pruett raped Mrs. Harvey, not the least of which is Pruett's confession to that crime. Any medical evidence (seminal fluid in Mrs. Harvey's vagina and lack of lacerations and bruises to Mrs. Harvey's genitalia) that Pruett says was consistent with consensual intercourse is not only consistent with rape, it is not even inconsistent with the unqualified fact that consent was obtained at knifepoint, not arguably consensual. We think it is abundantly clear that Pruett cannot show that if the jury had been given a choice between capital murder and first degree murder on the grounds that there was no rape, no reasonable juror would have chosen capital murder. Indeed, the jury separately convicted Pruett of rape. Therefore, Pruett is not actually innocent of the crime for which the death penalty was imposed on this ground.

### The Lack of Premeditation Claim as Measured Against *Sawyer v. Whitley*

■ We will also assume *arguendo,* although it is an assumption that cannot be at

all maintained,[6] that the trial judge should have instructed the jury on the lesser-included offense on the grounds that there was no premeditation.

Even when we are overly generous in constructing his arguments for him, Pruett is unable to convince us that "no reasonable juror would have found the petitioner eligible for the death penalty." *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2515. Pruett's argument that he lacked deliberation or premeditation based on "the frenzied nature of the killing," Brief of Appellant at 19, is based on what is admittedly a self-serving reading of his confession. That reading of the confession is quite strained, overlooks inherent conflicts in his story, and is not supported by the confession as a whole. Even assuming, however, for argument, that the evidence he claims is in his confession—that he did not mean to do it, that he must be crazy for doing it, that he did not plan to do it, and that he did not know why he did it—is all uncontroverted by other portions of his confession, a reasonable juror still could infer premeditation from Pruett's attempts to escape detection by discarding his clothes and his subterfuge during his initial interview with the police, the viciousness of the multiple stab wounds, see *Clozza v. Commonwealth,* 228 Va. 124, 321 S.E.2d 273, 279–280 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985),[7] and the fact that he had the murder weapon with him in the first place. Thus, a reasonable juror could infer, from Pruett's own statements, that he took the knife upstairs to kill Mrs. Harvey as well as to force

her to have sex with him. There simply is no basis for saying that no reasonable juror could infer premeditation from Pruett's actions, even taking the facts in the light most favorable to him.

Because Pruett has demonstrated neither cause and prejudice nor actual innocence, we decline to reach the merits of Pruett's defaulted *Beck* claim.

### IV.

Pruett also alleges ineffective assistance of counsel that entitles him to have his sentence and convictions set aside because of Stallings's failure to adequately communicate with Dr. Tsao, the court-appointed psychiatrist, failure to follow up on Tsao's findings, failure to develop a guilt-phase strategy, failure to develop and present evidence that Pruett would not be a continuing threat to society if he were incarcerated for life, and failure to develop mitigating evidence[8] for the penalty phase of the trial. After a review of the record, we are of opinion that Pruett did not so receive ineffective assistance of counsel.

Pruett's claims really fall into two categories: First, that Stallings's decisions not to argue that Pruett would not be a continuing threat if incarcerated and not to develop a guilt-phase strategy based on consensual sex were unreasonable, and second, that there was ample evidence of psychological disturbance which could have been offered in mitigation that Stallings did not adequately investigate or present.[9] We deal with each of these contentions in turn.

**6.** Because the instruction was never offered.

**7.** The *Clozza* case involved the brutal rape and murder of a thirteen year old girl. In addressing Clozza's argument that he lacked premeditation for the murder, the Supreme Court of Virginia decided that in determining premeditation, "the jury properly may consider the brutality of the attack, whether more than one blow was struck, the disparity in size and strength between the accused and the victim, and the defendant's efforts to avoid detection." 321 S.E.2d at 279.

**8.** Specifically, Pruett claims trial counsel placed undue emphasis on the impact of a death sentence on Pruett's family; failed to investigate possible avenues of mitigation; failed to develop other evidence of mental illness, developmental problems, organic brain damage, and post-traumatic stress disorder; and failed to present some

evidence that trial counsel had found during his investigations.

**9.** Pruett's claims that Stallings improperly attempted to persuade the jury to identify with Pruett's parents and that Stallings did not offer every possible piece of mitigating evidence do not merit lengthy discussion. These decisions are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce. See *Clozza v. Murray,* 913 F.2d 1092 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991). Stallings's decisions in those respects were quite within the bounds of effective representation.

A.

Pruett's first group of claims asks us to hold that Stallings's strategic decisions were manifestly unreasonable. Stallings's testimony at the plenary hearing establishes that he did not pursue the future dangerousness argument because of a carefully considered trial strategy.

 Stallings knew that Dr. Tsao had found that Pruett presented a threat of future dangerousness to society. Stallings talked to Tsao and explored with him the bases for that opinion. When he learned that Tsao would not change his mind, he decided not to pursue an argument that Pruett would not present a danger if he were incarcerated. He explained his reasoning on cross-examination as follows:

[Mr. Anderson]: There is one final complaint that you denied the possibility of the defendant adapting well to incarceration and, therefore, perhaps not being a future danger.

Did you think that the jury would be more impressed with evidence of Mr. Pruett's dangerousness to the community at large or whether or not he would be a danger if confined in prison? Which one do you think the jury would be more interested in?

[Mr. Stallings]: We were talking about community at large. That was a real tactical thing we were playing with. I wanted to say that David would never get out of prison. I was handcuffed a little bit on that as to how far the judge would let me go. These were all conferences we had. I don't know if it's on the record or not, and the Commonwealth said if I opened that door, they could get into parole eligibility so I kind of walked a thin line there and I think the Commonwealth got into dangerousness in their closing.

I was trying to present to the jury the myth that if they give him life, he would be in there for the rest of his life and he would never get out and, again, I guess that's where I was coming from was my concern on it. I wanted to make the jury think he will never hurt anyone in society again. He is going away forever.

Q: Going back to Doctor Tsao's evaluation and when he was asked to determine whether Mr. Pruett was a future danger, did you at the time think that he should primarily focus on his dangerousness generally or his dangerousness to other inmates and people in the system—community.

A: That's what I would be dealing with. Again, I don't really want to talk about dangerousness to the prison community because the best case scenario, that's still a factor.

If they give him life, I don't want Tsao getting up there saying if you give him life, he won't hurt anyone else, but he sure could hurt someone in prison.

In light of the circumstances in which Stallings made his decision, we are of opinion that it was objectively reasonable to try to get the jury to believe that a life sentence meant confinement for life.[10]

 Pruett also contends that Stallings failed to adequately investigate the facts of the rape. The testimony at the plenary hearing reveals that Stallings did not pursue the late claim of consensual sex because it was not credible. Pruett maintained that he had raped Mrs. Harvey until sometime a week or so before his trial. Pruett made the assertion of consensual intercourse while talking to Stallings and Dougherty about post-traumatic stress syndrome and about the fact that Pruett's killing of Mrs. Harvey did not match other killings he claimed to have committed in Vietnam.[11] Pruett was told that the main difference between his

10. Stallings successfully kept the matter of parole out of the case, and as well secured an instruction by the court for the jury not to consider Pruett's dangerousness if imprisoned.

11. Pruett claimed at one time that he had killed eight women in Vietnam after having consensual sex with them. These claimed events ostensibly were the initial stressor that caused Pruett to suffer from post-traumatic stress disorder. See generally American Psychiatric Ass'n, DSM–III–R § 309.89 (3d ed. 1987). Pruett does not press here his claim that he committed these killings, which were not supported by any available military records.

killing of Mrs. Harvey and the ones he claimed to have committed in Vietnam was that he raped Mrs. Harvey, while the Vietnam killings allegedly occurred after consensual sex. Pruett immediately recanted that he raped Mrs. Harvey and said that she had engaged in consensual sex with him. Dougherty testified that "I felt at that point that there was no reality in that. I mean, he changed [his story] to suit our needs—the defense's needs." Pruett would have us hold that it is objectively unreasonable for a lawyer to fail to further investigate a claim that is based on underlying facts the lawyer with good cause believes to be incredible. This we decline to do. We also note that this decision by Stallings and Dougherty is supported by the record. Even Pruett's confession has no hint of consensual intercourse, as we have previously pointed out.

Having found that Stallings's decisions not to pursue the future-dangerousness-in-prison argument and the claim of consensual sex were objectively reasonable, we find no defect in Stallings's performance in these two respects and do not reach the prejudice issue. We next turn to the group of Pruett's ineffective assistance of counsel claims relating to Stallings's investigation and presentation of a psychiatric defense.

## B.

▆ Pruett argues that Stallings failed to investigate or present psychiatric evidence that could have been offered in mitigation of Pruett's crime. He argues that Stallings did not adequately follow up on Dr. Tsao's findings, did not consult with additional experts, and failed to develop other evidence of mental illness, developmental problems, organic brain damage, and post-traumatic stress disorder. After a review of the record, we find that Stallings's actions with respect to investigating a possible psychiatric defense were objectively reasonable.

At the outset, we note that much of Pruett's fault-finding lies with Tsao. However, Pruett asserts a claim of ineffective assistance of counsel, which requires us to review the lawyer's conduct.[12]

We also note that in the usual case, this court is presented with conflicting psychiatric or psychological testimony. A defendant who appears to be suffering from some sort of mental illness, abnormality, or condition is usually evaluated by a state psychiatrist whose conclusions are disputed by the defense's psychiatrist or psychologist. Here, we do not have that dispute. Stallings requested a psychiatric evaluation of his client and recommended a psychiatrist. The circuit court judge ordered Stallings's chosen psychiatrist, Dr. Tsao, to conduct the evaluation. Stallings chose Tsao because he had consulted with other defense attorneys and had been told that Tsao was defense oriented.

Stallings's testimony reveals that he spoke to Tsao several times in an attempt to find evidence of mitigation. He recounted what he termed his "last call of desperation" to Tsao imploring him to find something he could use in mitigation. Stallings also asked the court to appoint another psychiatrist to make an evaluation on the basis that Tsao was not an expert in post-traumatic stress disorder. The court denied the request. Stallings testified that he felt he was clear in telling Tsao the purpose of the evaluation,

---

12. In *Waye v. Murray*, 884 F.2d 765, 766–67 (4th Cir.) (per curiam), *cert. denied*, 492 U.S. 936, 110 S.Ct. 29, 106 L.Ed.2d 634 (1989), we rejected the notion that there is either a procedural or constitutional rule of ineffective assistance of an expert witness, rather than ineffective assistance of counsel. Rather, the rule is that the due process clause requires that the State appoint a competent expert witness to evaluate the defendant's mental state when it is in serious question and the defendant is indigent. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). However, *Ake* requires only a competent expert. Pruett does not claim that Tsao was incompetent; he claims only that there were better qualified

psychiatrists available. See 771 F.Supp. at 1442. We will not graft the *Strickland* effective assistance of counsel test onto the performance of an expert witness in these circumstances. In *Waye* we stated:

It will nearly always be possible in cases involving the basic human emotions to find one expert witness who disagrees with another.... To inaugurate a constitutional or procedural rule of an ineffective expert witness in lieu of the constitutional standard of an ineffective attorney, we think, is going further than the federal procedural demands of a fair trial and the constitution require. 884 F.2d at 767.

and Stallings also testified that he had no reason to believe that Tsao had not performed as he was asked. Stallings agreed that he was satisfied with the way Tsao had conducted his evaluation and had problems only with the fact that Tsao's conclusions did not fully suit the defense's requirement.

Despite all of Stallings's efforts, Pruett would have us find that Stallings should have known that Pruett suffered from mental illness, organic brain damage, developmental problems, and post-traumatic stress disorder, and that Tsao's evaluation was flawed. We cannot reach that result. An attorney is not required to be so expert in psychiatry. Stallings did the objectively reasonable thing when appointed to Pruett's case: he asked other members of the defense bar to recommend a psychiatrist who would begin his evaluation on Pruett's side. Stallings spoke with Tsao often and tried to persuade him to change his evaluation. He also provided Tsao with much of the information that Pruett now claims would have made all the difference in his psychiatric evaluation, including the fact that Pruett had two siblings with organic brain damage.[13] We simply do not find any defect in Stallings's performance, and we therefore find that Pruett received effective assistance of counsel within the meaning of *Strickland.*

### C.

Pruett's last claim is that the district court erred in denying him an evidentiary hearing on his ineffective assistance of counsel claims. He claims that evidence should have been taken in the state habeas proceeding to determine seven ineffective assistance of counsel claims he now asserts. We find no merit in this contention.

Pruett complains about three principal aspects of trial counsel's performance: the failure to request the appointment of a forensic pathologist to testify that the absence of lacerations and bruises around Mrs. Harvey's genitalia diminished the likelihood of forcible rape, the failure to inquire on voir dire as to whether jurors could consider finding the defendant guilty of a lesser-included offense of first degree murder if they were presented with evidence raising a reasonable doubt as to the defendant's ability to premeditate the claim, and the failure to offer a first degree murder instruction based on a lack of premeditation.

■ We note that Pruett's claim about trial counsel's performance with respect to the appointment of a pathologist was not raised in his federal habeas petition and his claim should therefore be dismissed. A hearing could not remedy this procedural default and we ordinarily do not consider claims not raised in the district court. Pruett's claim is so obviously without merit, however, even if properly before us, that we have no hesitation in stating that it does not take a forensic pathologist to conclude that absence of lacerations or bruises around a rape victim's genitalia is evidence consistent with consensual intercourse. So the failure to request the appointment of such a witness does not amount to a showing of an incompetent attorney.

Pruett's next claim is not procedurally defaulted, but it is equally without merit. The failure of trial counsel to inquire as to whether the jurors could consider finding the defendant guilty of the lesser-included offense of first degree murder as outlined above is no more than a question as to whether or not the jurors could do their duty if instructed and is not even evidence of incompetent representation.

Stallings's performance in not offering a first degree murder instruction on a lack of premeditation theory is an issue we thoroughly discussed in Part III(B), *supra,* and we found to be without merit.

Three other matters which Pruett now claims demanded a hearing are his claims that his appellate counsel was ineffective. Specifically, Pruett faults Stallings for failing to appeal the trial court's refusal to give the first degree murder charge based on the lack

13. We agree with the district court that Pruett "has never argued that Dr. Tsao was not generally qualified to evaluate him. He claims only that there were *better* qualified psychiatrists available, or that other psychiatrists would have rendered opinions more helpful to his defense...." 771 F.Supp. at 1442.

of rape theory, failing to appeal the trial court's ruling on the admissibility of the victim impact evidence, and failing to assign as error several instances of claimed prosecutorial misconduct. We note at the outset that Pruett's claims of ineffective assistance of counsel on these issues are an attempt to have the merits of his underlying procedurally defaulted claims determined. Pruett hopes to establish cause and prejudice for his defaults under the meaning of *Murray v. Carrier, supra.* We find that he has not made his case for ineffective assistance of counsel or proved his need for a hearing.

Pruett's first claim about Stallings's failure to appeal the lesser-included offense instruction also was discussed in Part III(B), *supra,* and we need not repeat that discussion here.

 Pruett's second claim is that his appellate counsel was ineffective for failing to appeal the introduction of (1) Mr. Harvey's testimony at the guilt phase of trial; and (2) Mr. McInnis's testimony in the penalty phase. As to the claim regarding the failure to appeal the introduction of Mr. Harvey's testimony at the guilt phase, this claim has not been exhausted and should be dismissed. See 28 U.S.C. § 2254(b). Although Pruett pleaded this particular claim of ineffective assistance of appellate counsel in his amended state habeas petition, see Amended State Habeas Petition at ¶¶ 214–25, he defaulted on this claim when he failed to argue it to the Virginia Supreme Court on habeas review.[14] Instead, in arguing why the state habeas trial court improperly applied the *Parrigan* rule to his claim relating to Mr. Harvey's testimony, Pruett stated in his Petition for Appeal that Mr. Harvey's testimony was objected to at trial, and, incorrectly, that "[t]hese claims [the Harvey and McInnis testimony] were likewise raised and adjudicated on direct appeal to this Court." *Pruett v. Thompson,* No. 890908, Petition for Appeal at 7 (Va. Nov. 16, 1989). In fact, Pruett did not argue the claims relating to Mr. Harvey's testimony on direct appeal. Whether by inadvertence or design, the failure to present the matter of Mr. Harvey's testimony to the

Virginia Supreme Court has not been overcome. See *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991). An evidentiary hearing in the district court cannot cure the problem, and we note that the merits of the underlying claim itself are also procedurally barred. The claims relating to Mr. Harvey's testimony were never presented to the Virginia Supreme Court and are therefore defaulted under the *Parrigan* rule, as the state habeas trial court found. *Pruett v. Thompson,* No. CL 87–2070 (Cir.Ct. of Va. Beach, June 14, 1988).

As for the second half of Pruett's claim, which relates to Stallings's failure to appeal issues related to Mr. McInnis's testimony in the penalty phase of trial, the claim is patently without merit as several issues related to Mr. McInnis's testimony were, in fact, appealed to the Virginia Supreme Court and found to be without merit. *Pruett v. Commonwealth,* 232 Va. 266, 351 S.E.2d 1, 11–12 (1986). And we note, in passing, our agreement with the reasoning of the Virginia Supreme Court on the merits. See also *Payne v. Tennessee,* —— U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (holding that the Eighth Amendment erects no *per se* bar to the admission of victim impact evidence in the penalty phase of a capital murder trial). Stallings's conduct in appealing issues related to McInnis's testimony cannot now support a finding that Stallings was ineffective for failure to appeal these same issues. An evidentiary hearing could not convince us otherwise.

Pruett next argues that his appellate counsel was ineffective for failing to appeal several instances of alleged prosecutorial misconduct at the guilt and penalty phases of trial. At the guilt phase, Pruett complains about the prosecutor's offering evidence of Mrs. Harvey's character, arguing that Stallings conceded guilt in *voir dire,* stating that he would offer evidence in aggravation at the penalty phase, and telling the jury in closing argument that it should show Pruett the same compassion that he had shown Mrs.

---

**14.** Claims of ineffective assistance of counsel that a petitioner proffers to establish cause and prejudice under *Murray* are themselves subject to the procedural default and exhaustion rules. *Murray,* 477 U.S. at 488–89, 106 S.Ct. at 2645–46.

Harvey. At the penalty phase, Pruett complains about the prosecutor's stating that a death sentence would be appropriate based solely on the guilt-phase verdict, stating that the Commonwealth could not conceive of a more appropriate case for the death penalty, arguing to the jury that it did not have to consider mitigating evidence, arguing that Mrs. Harvey did not have due process or an alternative to the death penalty, offering Mr. McInnis's testimony about the condition in which he found his wife and the crime scene, and arguing the heinousness of the McInnis murder. All of these acts, he argues, constituted prosecutorial misconduct, and his appellate counsel was ineffective for failing to raise them on direct appeal.

 Two of the claims—the prosecutor's arguing that Stallings had conceded guilt and the offering of Mr. McInnis's testimony— were raised on direct appeal to the Virginia Supreme Court and fully litigated on the merits. We agree with the Virginia Supreme Court on the merits, 351 S.E.2d at 10–12, and fail to see how claims that were raised on direct appeal can now form the basis of an ineffective assistance of appellate counsel claim. Further, the claim that the prosecutor committed misconduct when he argued the heinousness of the McInnis murder to the jury also is without merit and cannot support a finding of ineffective assistance of counsel for failing to raise it on appeal. The admission of testimony about the McInnis murder was proper, see *Payne, supra,* and

the prosecutor did not commit misconduct by arguing properly admitted evidence to the jury. Surely if there is no prosecutorial misconduct, there can be no ineffective assistance of appellate counsel for failure to assign as error on appeal the proper conduct of the prosecutor.

The district court found that the merits of all of the remaining allegations of prosecutorial misconduct were defaulted except perhaps the prosecutor's offering some evidence relating to the character of Mrs. Harvey. See note 4, *supra.* Although the claim that Stallings's failure to assign as error in the direct criminal appeal this list of alleged items of prosecutorial misconduct was ineffective representation was presented to the state habeas trial court, it was not pursued in the state Supreme Court, so the district court held correctly that the subject was procedurally defaulted. The matter has not been presented to the state Supreme Court and is precluded from consideration here by *Murray v. Carrier,* 477 U.S. 478, 489, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986).

Pruett's final claim of ineffective assistance of counsel relates to the penalty phase instructions at trial.[15] Pruett appears to argue that Stallings should have requested an instruction that informed the jurors that they were required to consider mitigating evidence.[16] The state habeas court dismissed the claim as meritless without a hearing. *Pruett v. Thompson,* No. CL 87–2070 (Cir.Ct.

---

15. Stallings did request that the court instruct the jury that the court would sentence Pruett if the jury could not reach a unanimous sentencing verdict. The trial court refused the proffered instructions. Stallings raised that claim on appeal to the Virginia Supreme Court. The state habeas court found that that part of Pruett's habeas claim could not be relitigated and Pruett appears to have abandoned the argument before this court.

Pruett also argued in his state and federal habeas petitions that the jury should have been instructed that they must unanimously find a statutory aggravating factor, see Part II, *supra.* Pruett also appears to have abandoned this claim before this court. In any event, the merits of the claim are procedurally defaulted because the claim was not raised on direct appeal to the Virginia Supreme Court, see *Pruett v. Thompson,* No. CL 87–2070 (Cir.Ct. of Va. Beach, June 14, 1988) (relying on *Parrigan* ), and the claim is

nonetheless without merit. In *Coleman v. Thompson,* 895 F.2d 139 (4th Cir.1990), *aff'd on other grounds,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), we noted that Supreme Court precedent makes clear that there is no constitutional right to be sentenced by a jury, and the automatic review which the Virginia Supreme Court is statutorily required to conduct of every sentence of death precludes the argument that a Virginia sentencing jury must unanimously find a statutory aggravating factor. *Coleman,* 895 F.2d at 145–46. The Virginia Supreme Court found that both aggravating factors had been proven in this case. 351 S.E.2d at 13–14.

16. Pruett argues in his brief that this constituted ineffective assistance of *appellate* counsel. However, the claim makes no sense in that light because there was nothing from which Stallings could have failed to appeal. We therefore construe the claim as one of ineffective assistance of trial counsel.

of Va. Beach, June 14, 1988). The state habeas court held that the merits of the instruction claim as related to mitigating evidence were barred from consideration under the *Parrigan* procedural default rule. *Pruett v. Thompson,* No. CL 87–2070 (Cir.Ct. of Va. Beach, June 14, 1988).

■ The district court found that consideration of the merits of the instruction claim as related to mitigating evidence was procedurally defaulted, and, alternatively, the claim was without merit. 771 F.Supp. at 1444. The district court further found no merit to the ineffective assistance of counsel claim because the penalty phase instructions were proper. 771 F.Supp. at 1449.

■ We agree with the reasoning of the district court. The merits of the instruction claim were defaulted under *Parrigan* and we ordinarily would not address them. However, the ineffective assistance of counsel claim is before us. We are of opinion that it is not ineffective assistance of counsel to fail to offer additional or different instructions if the ones given by the trial court are proper. This question is easily resolved here because the instruction given was proper. See *Briley v. Bass,* 750 F.2d 1238, 1242–44 (4th Cir. 1984) (approving almost identical instructions and finding that "all the evidence" language informs the jurors that they must consider mitigating evidence), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

We therefore are of opinion that Pruett is not entitled to a hearing because both his ineffective assistance counsel claims and the underlying claims are without merit. In addition, we note that Pruett has not alleged any additional facts that would entitle him to a new evidentiary hearing. See *Poyner v. Murray,* 964 F.2d 1404, 1414 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992) (stating that a habeas petitioner is entitled to an evidentiary hearing in federal district court only if "(1) he alleges additional facts that, if true, would entitle him to relief; and (2) he is able to establish any of the six factors set out by the Court in *Townsend v. Sain,* [372 U.S. 293, 83

S.Ct. 745, 9 L.Ed.2d 770 (1963)], or the related factors set out in 28 U.S.C. § 2254(d)." (citations omitted)). Pruett points to the fact that he was not allowed to question Tsao about conflicts between his habeas hearing testimony and his earlier statements to Pruett's habeas counsel, apparently arguing that the state hearing was not full and fair or complete. A review of the record reveals that this contention is without merit and not supported by the facts. See 2 Hab.Tr. at 34–36. We therefore find no merit in Pruett's contentions, and he has not, in any event, made the required showing that would entitle him to a hearing.[17] We therefore hold that the district court did not abuse its discretion under 28 U.S.C. § 2254 by failing to provide Pruett with an evidentiary hearing.

## V.

We should add that the length of this opinion is due, in no little extent, to the numerous points raised in Pruett's brief, many by allusion and indirection. We are mindful of our obligation to discuss all of the contentions in cases such as this which have arguable merit, and we have done so.

We are further of opinion that Pruett had a fair trial in every sense of the words, and as well he has had extensive appellate and collateral review of his conviction.

The judgment of the district court is accordingly

*AFFIRMED.*

---

**17.** We also agree with the district court that Pruett "has not stated what non-cumulative evidence he would or could put on, if granted another hearing on his ineffective assistance claims in [the district court]." 771 F.Supp. at 1451.