Christopher James BECK, Petitioner,

v.

Ronald J. ANGELONE, Director, Virginia Department of Corrections, Respondent.

No. Civ.A. 2:99CV855.

United States District Court, E.D. Virginia, Norfolk Division.

May 5, 2000.

Robert E. Lee, Jr., Richmond, VA, Andrew A. Protogyrou, Protogyrou & Rigney, Norfolk, VA, Douglas Fredericks, Norfolk, VA, for Petitioner.

Robert Q. Harris, Office of the Attorney General, Richmond, VA, for Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

PRINCE, United States Magistrate Judge.

Virginia state inmate Christopher James Beck ("Beck") brings this petition seeking habeas *corpus* relief under 28 U.S.C. § 2254 (1999). The matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The respondent, the Virginia Department of Corrections ("Respondent"), has answered and moved to dismiss. The Court offers the following analysis.

### *I. STATEMENT OF THE CASE*

### *A. PROCEDURAL BACKGROUND*

On May 15, 1996, before the Circuit Court of Arlington County and pursuant to a Plea Memorandum, Beck entered pleas of guilty to four counts of capital murder,[1]

1. The four counts of capital murder, each in violation of Virginia Code § 18.2–31, are as follows:

Case No. 95–1382: Beck did wilfully, deliberately, and with premeditation, kill William Miller, during the commission of robbery or

three counts of robbery, one count of statutory burglary, three counts of use of a firearm during the commission of a robbery and three counts of use of a firearm during the commission of murder. Beck also entered an *Alford* plea, *see North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (plea of guilty along with a protestation of innocence), as to one count for the rape of Florence Marie Marks and one count for the use of a firearm during the commission of rape. Following a colloquy with Beck and a proffer of the evidence by the Commonwealth, the Circuit Court of Arlington County accepted Beck's pleas of guilty on all counts.

Subsequently, but prior to sentencing, Beck, through counsel, made a motion to withdraw his plea of guilty on one count of capital murder.[2] The Commonwealth likewise moved the Circuit Court to enter an order of *nolle prosequi* on the same count. On August 12, 1996, the Circuit Court accordingly dismissed that case.

Sentencing evidence was presented to the Circuit Court from August 12–14, 1996. Then, on August 15, 1996, Beck was sentenced to death on all three remaining counts of capital murder. Beck also received a prison sentence of: life for each of the counts of robbery; twenty years for the one count of burglary; five years for each of the counts of use of a firearm during the commission of a robbery; five years for each of the counts of use of a firearm during the commission of murder; life for the one count of rape; and three years for the one count of use of a firearm during the commission of rape.

On direct appellate review of his convictions, Beck, through counsel, filed an appeal with the Supreme Court of Virginia which set forth the following claims:

I. The trial court erred in denying defendant's motion to prohibit the imposition of the death penalty.

II. The trial court erred in receiving victim impact evidence from individuals who were not related to the victims.

III. The trial court erred in receiving recommendations concerning the imposition of the death penalty from the victims' friends and family members.

IV. There was insufficient evidence to support the trial court's finding of vileness and future dangerousness.

V. The sentences of death were imposed under the influence of passion, prejudice, or other arbitrary factors and are excessive and disproportionate to the penalty imposed in similar cases.

Finding some of Beck's claims not cognizable on appeal by virtue of his guilty pleas, *see Beck v. Virginia,* 253 Va. 373, 380–81, 484 S.E.2d 898 (1997), the Supreme Court of Virginia set forth the principle issues as follows:

attempted robbery while armed with a deadly weapon;

Case No. 95–1383: Beck did wilfully, deliberately, and with premeditation, kill and murder David Stuart Kaplan during the commission of robbery or attempted robbery while armed with a deadly weapon;

Case No. 95–1384: Beck did wilfully, deliberately, and with premeditation, feloniously kill Florence Marie Marks, William Miller, and David Stuart Kaplan as part of the same act or transaction; or did wilfully, deliberately, and with premeditation, feloniously kill William Miller and David Stuart Kaplan as part of the same transaction; and

Case No. 96–131: Beck did wilfully, deliberately, and with premeditation, kill and murder Florence Marie Marks during the commission of robbery or attempted robbery or rape while armed with a deadly weapon.

2. Case No. 95–1384, referenced above at n. 1.

whether the trial court erred [1] in receiving 'victim impact evidence' from persons other than family members of the victims and [2] in receiving 'recommendations' concerning the imposition of the death penalty from the victims' friends and family members.

*Id.* at 375, 484 S.E.2d 898. On April 18, 1997, the Supreme Court of Virginia affirmed the Circuit Court's judgments, and declined to commute the sentences of death. *Id.* at 388, 484 S.E.2d 898. Likewise, Beck's petition for rehearing was denied. A subsequent petition for writ of certiorari also was denied by the United States Supreme Court. *Beck v. Virginia*, 522 U.S. 1018, 118 S.Ct. 608, 139 L.Ed.2d 495 (1997).

On February 6, 1998, Beck, through counsel, filed an initial state habeas petition with the Supreme Court of Virginia. The initial state habeas petition was then supplemented on July 13, 1998. This first supplemental filing, however, violated the Rules of the Supreme Court of Virginia. *See* Rules of the Supreme Ct. of Va. 5:7(g) (no petition for a writ of habeas corpus shall exceed fifty typed pages). Accordingly, on September 3, 1998, Beck, through counsel, filed a "Supplemental Petition for Writ of Habeas Corpus in Compliance with this Court's Order to Reduce the Petition to 50 Pages or Fewer Subject to Amendment." [3]

In his state habeas petition, Beck, through counsel, set forth the following claims:

I. Petitioner's plea was not knowingly, intelligently, and voluntarily entered.

(a) The trial court did not inquire into petitioner's psychiatric and emotional deficits.

(b) The trial court did not adequately inquire into petitioner's understanding of the charges against him.

(c) The trial court failed to inquire into petitioner's psychiatric medication.

II. The trial court erred by accepting petitioner's *Alford* pleas.

III. Counsel rendered ineffective assistance regarding petitioner's guilty plea.

(a) Counsel unreasonably failed to investigate and litigate petitioner's competency or to obtain any determination of petitioner's competency.

(b) Counsel unreasonably failed to move timely for preservation of evidence.

(c) Counsel unreasonably failed to request necessary expert assistance.

(d) Counsel unreasonably failed to pursue mental health defenses.

(e) Counsel unreasonably stipulated to evidence in government's proffer.

(f) Counsel unreasonably failed to ensure that the court conducted a proper colloquy.

(1) Counsel unreasonably failed to alert the court to petitioner's educational, emotional, and psychiatric deficits.

(2) Counsel failed to inform petitioner of elements of offenses.

(3) Counsel unreasonably failed to alert the court to petitioner's medication.

3. Subsequent references to Beck's state habeas petition, or the claims therein, refers solely to this supplemental petition, filed with the Supreme Court of Virginia on September 3, 1998.

(g) Counsel unreasonably advised petitioner to plead guilty.

(h) Counsel unreasonably failed to move to withdraw petitioner's guilty pleas.

IV. Counsel rendered ineffective assistance regarding sentencing phase.

(a) Counsel provided ineffective assistance with respect to petitioner's medications.

(1) Counsel failed to seek the appointment of a psychiatrist.

(2) Counsel unreasonably failed to request expert assistance under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

(3) Counsel failed to object to the court's conclusions regarding medication.

(4) Counsel failed to obtain and/or provide information of additional medication prescribed following the plea to the court or the court appointed experts.

(5) Counsel unreasonably failed to advise petitioner of the possible legal ramifications of his medication.

(b) Counsel unreasonably failed to develop and present a coherent theory of mitigation.

(c) Counsel unreasonably failed to object to the Commonwealth's comment on petitioner's failure to testify.

(d) Counsel failed to object to prosecution's use of facts not in evidence.

(e) Counsel unreasonably failed to object to the Commonwealth's misstatement of the record.

(f) Counsel unreasonably failed to object to the trial court's findings of fact regarding petitioner's post-arrest conduct.

(g) Counsel unreasonably failed to object to Dr. Cornell's hearsay testimony.

(h) Counsel unreasonably failed to object to court's finding of intent.

(i) Counsel unreasonably failed to object to the court's refusal to consider petitioner's cooperation and guilty pleas as mitigating.

V. Counsel rendered ineffective assistance of counsel on appeal.

VI. Petitioner's court appointed experts were not qualified and/or performed incompetently.

VII. The death penalty is unconstitutional.

VIII. Petitioner is actually innocent of rape, robbery and capital murder.

On January 28, 1999, Supreme Court of Virginia dismissed Beck's state habeas petition after: applying the rule in *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), to petitioner's claims I, II, III, VI, VII and VIII; applying the rule that an accused who enters a guilty plea is bound by his representations at trial regarding voluntariness of the plea, *Anderson v. Warden,* 222 Va. 511, 281 S.E.2d 885 (1981), to petitioner's claims I, II, and III; and finding no merit in petitioner's allegations IV and V. Likewise, on April 16, 1999, the Supreme Court of Virginia denied Beck's petition for rehearing.

On May 3, 1999, pursuant to Virginia Code § 53.1–232.1(i), the Circuit Court of Arlington County set Beck's execution for June 10, 1999. Both the Supreme Court of Virginia and the United States Supreme Court denied Beck's application for a stay of execution, on May 27, 1999, and June 4, 1999, respectively.

Beck's federal habeas proceeding followed, and the Court accordingly, on June

7, 1999, stayed the order of execution. (Docket No. 6.) On October 1, 1999, Beck, through counsel, filed his federal habeas petition. (Docket No. 36.) Included with his federal habeas petition were three motions: (1) Motion to Expand the Record Pursuant to Rule 7, (2) Request for Discovery, and (3) Motion and Request for Hearing. The Court denied Beck's three motions for the reasons set forth in its Orders of January 3, 2000, and March 29, 2000. (Docket Nos. 43 and 50.)

*B. FACTUAL BACKGROUND*

As found by the Supreme Court of Virginia on direct appeal, the facts of this case can be summarized as follows:

> Beck told police that several days before the murders [of Florence Marks, William Miller and David Kaplan,] he formulated a plan to kill Miller, Beck's former employer. On Monday, June 5, 1995, Beck traveled by bus from his home in Philadelphia, Pennsylvania, to Washington, D.C., arriving there at 6 p.m. The following morning Beck went to Arlington to the house shared by Marks, Miller, and Kaplan. He arrived at the house at 11 a.m., 'walked around the perimeter,' and then broke in through a basement window under the porch.
>
> Wrapping a sledge hammer he found in the basement with a cloth to 'muffle the sound,' he used the sledge hammer to batter a hole in the door to the first floor of the house. Beck then went to Miller's apartment and chose a .22 caliber semi-automatic pistol from several loaded guns Miller kept in the house; he rejected another larger caliber weapon because its report would be too loud. After loading a spare magazine for the pistol, Beck went to the basement and waited for Miller to return home. As Beck waited he became 'nervous,' but finally concluded, 'I guess I'll go through [with] it.'
>
> Later that afternoon, Beck heard the sound of someone entering the basement. Beck raised the pistol to 'arm level,' and, as the door opened, he closed his eyes and fired two shots. When Beck opened his eyes, he saw Marks[, his cousin,] on the basement floor. Beck said, 'you stupid bitch, why did you have to come home?' In an attempt to make it appear that Marks had been raped and robbed, Beck cut off most of her clothes and stabbed her in the right buttock. He threw a condom he had found in the washer onto the floor and, in a further effort to make it appear that Marks had been sexually assaulted, he kicked her and penetrated her vagina with a hammer. Beck reasoned that sexual assault evidence would lead the police to believe that the crime had been committed by a stranger and not by a family member. Beck then went back upstairs to the first floor.
>
> About one hour later, Miller returned home. Beck was on the stairs leading to the second floor and hid behind the bannister. Miller remained downstairs for a while and then started up the stairs. Beck shot Miller in the face as he mounted the stairs. Miller fell down the stairs as Beck continued to shoot him, firing a total of five rounds at him. Beck put Miller's body in Kaplan's apartment and threw a blanket over the body, 'because I got sick and tired of looking' at it.
>
> Later that evening, but while it was still light outside, Kaplan returned home to find Miller's body lying in his room, Beck with a gun in his hand, and blood 'all over.' As Kaplan stared at the scene, Beck shot Kaplan in the back of the head. Beck fired 'several times and [Kaplan] just wouldn't die.' As Kaplan

lay on the floor, he talked to Beck, saying, 'hello, I'm awake, hello.' Beck fired what he believed was a full magazine at Kaplan and then stabbed him in the head. Beck stated that he 'just wanted [Kaplan] to stop having pain.' After he was stabbed, Kaplan appeared to have a 'seizure' and then died.

Beck went back through the house taking several guns and two bicycles. He also took cash from each of the victims. He took the keys to Miller's car, changed his clothes, loaded the car with guns and bicycles, and drove to Washington, D.C., to see a girl. As he left the house, Beck waved to the next door neighbor.

After a parking mishap in the District of Columbia in which Beck parked the car but neglected to engage the parking brake, and the car hit another vehicle, Beck drove home to Pennsylvania. Once there he hid the guns and 'stashed' the bicycles with a friend. He 'cleaned the car of all prints[,] wiped it all down,' and abandoned it after recovering the license plates.

Beck was initially interviewed by Arlington County Police officers at his mother's home in Philadelphia. Beck at first claimed to have been transporting bicycles from Tennessee at the time of the murders. When a friend failed to corroborate Beck's alibi, Beck admitted to police that he had killed Marks, Miller, and Kaplan. After his arrest Beck was returned to Arlington, where he gave a full statement concerning the murders to police. During his statement to the police, Beck was given a chance to say something for himself; he said:

> That ah I know what it is like to kill somebody, its one of the worst feelings you can live with that I don't know that it is pretty painful that is one of those things that you can't go

to sleep and I'm so sorry that I did, I'm so sorry that I had all that anger built up, I should had went to a counselor or something could have prevented it. I don't know, I'm sorry but I know this is going to be pretty hard for people to believe what happened.

In addition to giving that statement, Beck assisted the police in the recovery of the stolen car, guns, and bicycles. Autopsies of the three victims revealed that each had suffered multiple gunshot wounds to the head which had resulted in rapid, if not immediate death. Dr. Frances Patricia Field, an assistant chief medical examiner, testified [during the sentencing hearing] that Marks had sustained two gunshot wounds to the head. Dr. Field concluded that either of these gunshot wounds could have been lethal. In addition, the autopsy revealed that Marks had sustained multiple bruises on her body, a stab wound in the right buttock, and 'hyperemia or redness in the left back part of the entrance to the vagina.'

Miller's autopsy revealed bruises and abrasions of the lower extremities and several gunshot wounds to the face. Dr. Field concluded that the bullet which entered the left side of the head would have caused death 'relatively quickly if not instantaneously.'

Kaplan's autopsy revealed the presence of seven gunshot wounds. Kaplan sustained wounds to the left side of the head, the left and right sides of the face, the left side of the chin, the top and right side of the nose, and the left upper chest. In the medical examiner's opinion, only the bullets which entered the chest and the head below the ear would have been immediately or rapidly fatal. Dr. Field was unable to determine the order in which the wounds had been inflicted.

At the time the plea was taken, in addition to referring the trial court to Beck's statements, the Commonwealth made the proffer that a used condom found in the house was analyzed and that genetic material of both Marks and Beck was found. This evidence was in direct conflict with Beck's statement concerning the rape of Marks.

*Beck*, 253 Va. at 376–380, 484 S.E.2d 898.

### *II. GROUNDS ALLEGED*

In his federal habeas petition, Beck, through counsel, sets forth the following claims:

(A) Petitioner was denied his rights to Due Process under the Fourteenth Amendment by failure of the Commonwealth to prove each and every element of the crimes charged beyond a reasonable doubt.

(B) Petitioner's plea was not knowingly, intelligently and voluntarily entered.

- (1) The trial court did not adequately inquire into petitioner's understanding of the charges against him.
- (2) Trial counsel was ineffective in that they failed to explain the elements of the crimes charged and unreasonably stipulated to their admission.
- (3) The trial court erred in accepting petitioner's *Alford* plea because it was constitutionally flawed.

(C) Petitioner's sentencing abrogated his constitutional rights in that the trial court did not receive evidence of petitioner's psychiatric and emotional deficits.

- (1) The trial court failed to inquire into petitioner's psychiatric medication.
- (2) Counsel failed to provide the trial court with information enabling it to inquire into petitioner's psychiatric medication.

(D) Trial counsel rendered ineffective assistance by failing to request necessary expert assistance pursuant to *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

- (1) The trial counsel rendered ineffective assistance of counsel by failing to request a psychiatrist to explain the effect of petitioner's medications to the court and their ramifications.
- (2) The trial counsel failed to pursue the issues of petitioner's brain damage.

(E) Petitioner was incompetent to appear in court and participate in the proceedings on May 15, 1996, and at the sentencing proceedings; and counsel was ineffective in not bringing this to the court's attention and requesting a competency hearing; and the court did not hold the required hearing.

On November 5, 1995, Respondent filed a Motion to Dismiss with an accompanying memorandum of law. Having reviewed the pleadings and the record, the Court offers the following analysis.

### *III. EXHAUSTION, PROCEDURAL DEFAULT AND STANDARDS OF REVIEW*

#### *A. EXHAUSTION*

Before a federal habeas petitioner may present his claims to a federal court, he must have exhausted state remedies. Federal courts will not review a federal habeas petition on its merits until the petitioner first has fairly presented and exhausted the same claims in state court. *See Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981); *Preiser v. Rodriguez,* 411 U.S. 475, 491, 93

S.Ct. 1827, 36 L.Ed.2d 439 (1973). Exhaustion requires a fair presentment of each individual claim to the highest court in the state with jurisdiction to hear the claim, that is, in this case, the Supreme Court of Virginia. 28 U.S.C. § 2254(c); *see Pruett v. Thompson,* 771 F.Supp. 1428, 1436 (E.D.Va.1991), *aff'd* 996 F.2d 1560 (4th Cir.), *cert. denied* 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993).

When a federal court finds a federal habeas petition has unexhausted claims, it will ordinarily dismiss that petition without prejudice to allow for further state court review. However, if the underlying state laws would bar further state court review,[4] then federal court review of such unexhausted claims will be procedurally barred. Accordingly, absent a sufficient showing of cause and prejudice or actual innocence, the result is a dismissal of the unexhausted claims from federal court with prejudice due to procedural default. *See Bassette v. Thompson,* 915 F.2d 932, 936–37 (4th Cir.1990), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991).

### *B. PROCEDURAL DEFAULT*

Federal courts may not entertain a federal habeas petition unless the petitioner previously had complied with state procedures in exhausting state remedies. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Thus, if a state court denied a state habeas claim based on a rule of default that the state courts consistently enforce, then the petitioner also cannot obtain federal court review on the correlative federal claim. *Id.* This rule, referred to as the adequate and independent state grounds doctrine, is grounded in concerns of comity and federalism. *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640. Without the rule, the United States Supreme Court has cautioned, federal habeas proceedings would offer state prisoners a means to undermine state enforcement of its own rules and laws. *Id.* at 730–31, 111 S.Ct. 2546. Accordingly, absent a sufficient showing of cause and prejudice or actual innocence, the result is a dismissal of the procedurally defaulted claims from federal court with prejudice. *See Burket v. Angelone,* 208 F.3d 172, 183 (4th Cir.2000) (*citing Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).

For the sake of clarity, the Court will now consider the two rules of default that Respondent alleges were applied by the Supreme Court of Virginia. First, the Supreme Court of Virginia dismissed a number of Beck's state habeas claims pursuant to the rule in *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974) (state habeas review of a claim is barred by the failure to raise the claim at trial or on direct review). This rule, set forth in *Slayton,* constitutes an adequate and independent state ground for the denial of federal habeas relief. *See Burket,* at 183; *Fitzgerald v. Greene,* 150 F.3d 357, 366 (4th Cir.1998).

4. For example, pursuant to Virginia Code § 8.01–654(B)(2), a petitioner cannot obtain subsequent state habeas review if he alleges facts that were available to him at the time of filing any previous petition. *George v. Angelone,* 100 F.3d 353, 363 (4th Cir.1996) (*citing Hoke v. Netherland,* 92 F.3d 1350, 1354 n. 1 (4th Cir.1996); *Barnes v. Thompson,* 58 F.3d 971, 974–75 (4th Cir.1995)). Facts are considered available when the information a petitioner did have would have led to a diligent investigation, which, in turn, probably would have yielded the information at issue. *See id.*

Second, the Supreme Court of Virginia dismissed a number of Beck's state habeas claims pursuant to the rule in *Anderson v. Warden,* 222 Va. 511, 281 S.E.2d 885 (1981) (an accused who enters a guilty plea is bound by his representations at trial regarding voluntariness of the plea). Respondent contends that *Anderson* is a valid procedural rule. Beck contends that *Anderson,* as applied by the Supreme Court of Virginia, is substantive law. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), as recently as March 27, 2000, also has weighed in on *Anderson.* The Fourth Circuit noted that they are " 'uncertain of the true scope of the *Anderson* rule and, consequently, whether it can be properly considered an adequate and independent state procedural rule.' " *Burket,* at 182 (*quoting Royal v. Taylor,* 188 F.3d 239 (4th Cir. 1999)). In *Burket,* the Fourth Circuit declined, under the authority of *Royal,* to apply the *Anderson* rule. Accordingly, the Court also will decline to apply the rule set forth in *Anderson.*

### *C. THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("AEDPA")*

Because Beck filed his federal habeas petition after April 24, 1996, the effective date of AEDPA, those federal habeas claims which receive a review on their merits will be reviewed under AEDPA. *See Williams v. Taylor,* No. 98-8384, 2000 U.S. LEXIS 2837, at *70 (Apr. 18, 2000); *Burket,* at 177 (*citing Mueller v. Angelone,* 181 F.3d 557, 565–69 (4th Cir.1999)). Pursuant to AEDPA, *see* 28 U.S.C. § 2254(d), federal courts must defer to a state court's denial of a petitioner's claims when such state court denial was the result of an adjudication on the merits. As a consequence of this deference, a state court decision will stand unless it:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). This standard requires federal courts to make two threshold inquiries: (1) whether the underlying state court decision qualifies as a decision on the merits, and, if so, (2) whether such a decision on the merits was "contrary to" or involved an "unreasonable application" of clearly established federal law as established by the United States Supreme Court. *See Williams,* 2000 U.S. LEXIS 2837, at *88–89; *McLee v. Angelone,* 967 F.Supp. 152, 155–56 (E.D.Va. 1997); *Parker v. Angelone,* 959 F.Supp. 319, 321–22 (E.D.Va.1997).

When making the first inquiry, the Fourth Circuit and this District Court have determined that a "single paragraph" state court order constitutes a decision on the merits. *See Wright v. Angelone,* 151 F.3d 151, 156–57 (4th Cir.1998); *McLee,* 967 F.Supp. at 156–57; *Parker,* 959 F.Supp. at 322–23. Therefore, where the Supreme Court of Virginia summarily dismissed Beck's claims on the merits, this Court must then defer to that court's decision and deny relief unless Beck can prevail on the second part of the AEDPA inquiry. *Id.*

When making the second inquiry, a state court decision is "contrary to" clearly established federal law, as established by the United States Supreme Court, if: (1) the state court applied a rule that contradicts the governing law set forth by the United States Supreme Court, or (2) the state court confronted a set of facts that are materially indistinguishable

from a decision of the United States Supreme Court and nevertheless arrives at a different result. *Williams,* 2000 U.S. LEXIS 2837, at *75–77. A state court decision qualifies as an "unreasonable application" of clearly established federal law, as established by the United States Supreme Court, if the state court correctly identifies the governing legal standard but applies it unreasonably to the facts of a particular case. *Id.* at 79–80. A federal habeas court making this "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively reasonable." *Id.* at 83. A federal habeas court may not issue the writ simply because that court concludes in its individual judgment that the relevant state court decision applied clearly established federal law "erroneously or incorrectly;" rather, the state court application "must also be unreasonable." *Id.* at 87.

### *D. INEFFECTIVE ASSISTANCE OF COUNSEL*

Keeping in mind the deference afforded to state court decisions under AEDPA, the Court now considers the standard for reviewing claims of ineffective assistance of counsel. Such claims are governed by a two-part test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong requires a showing that Beck's counsel performed incompetently. The second prong requires proof that the deficient performance prejudiced the outcome of Beck's case. *Id.; see also Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

When assessing counsel's performance, the Supreme Court has stressed that the constitutional guarantee of effective assistance of counsel seeks only to "ensure that criminal defendants receive a fair trial," and not to "improve the quality of legal representation." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Accordingly, courts examining counsel's performance must grant a "heavy measure of deference to counsel's judgments," and, in doing so, may only evaluate such performance from counsel's own perspective and in light of all the circumstances at the time of the alleged error. *Id.* at 690–91, 104 S.Ct. 2052; *Kimmelman,* 477 U.S. at 381, 106 S.Ct. 2574. Additionally, a reviewing court generally should assess counsel's overall performance throughout the case, *Kimmelman,* 477 U.S. at 386, 106 S.Ct. 2574, and avoid "Monday morning quarterbacking." *See Stamper v. Muncie,* 944 F.2d 170, 178 (4th Cir.1991); *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (every effort must be made to eliminate the distorting effects of hindsight).

The second prong of the *Strickland* analysis presents an equally rigorous standard. To demonstrate prejudice, a petitioner cannot merely speculate that his attorney's error had "some conceivable effect" on the outcome of the case; rather, the petitioner must affirmatively prove the outcome of the case would have been different but for counsel's deficient performance. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Even before AEDPA, the Supreme Court stated that petitioners face a "highly demanding" task in establishing this link. *Kimmelman,* 477 U.S. at 382, 106 S.Ct. 2574.

Courts need not consider the performance and prejudice prongs of the *Strickland* analysis in sequential order. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. The Supreme Court has advised that, when evaluating ineffective assistance of counsel claims, courts should choose to apply whichever prong more quickly disposes of the respective claim. *Id.*

Additionally, in the context of a guilty plea, the *Strickland* analysis is

somewhat different. The first prong of *Strickland* essentially remains the same, that is, a petitioner must demonstrate his trial counsel fell below an objective standard of reasonableness. The second prong, however, requires there to be " 'a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial.' " *Burket,* at 189 (*quoting Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

## *IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW*

### *CLAIM (A). PETITIONER WAS DENIED HIS RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT BY FAILURE OF THE COMMONWEALTH TO PROVE EACH AND EVERY ELEMENT OF THE CRIMES BEYOND A REASONABLE DOUBT.*

#### *1. EXHAUSTION*

Federal habeas claim (A) essentially is a claim of insufficient evidence pursuant to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Beck claims that this federal claim of insufficient evidence was exhausted by way of state habeas claim VIII alleging actual innocence. However, the type of review now sought in federal habeas claim (A) is inherently different from that sought in state habeas claim VIII.

A *Jackson* inquiry, as sought in federal habeas claim (A), is aimed at determining whether there has been an independent constitutional violation, that is, a conviction based on evidence that fails to meet the reasonable doubt standard. Accordingly, federal courts, in reviewing *Jackson* claims, act in their traditional capacity assuring that a federal habeas petitioner is not being held in violation of his federal constitutional rights. *See Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Additionally, a *Jackson* inquiry focuses on whether a finder of fact made a rational decision to convict, not whether a finder of fact made the correct determination of guilt or innocence. *Id.*

A claim of actual innocence, unlike a *Jackson* claim, is not itself a constitutional claim, rather, it is "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." *Spencer v. Murray,* 5 F.3d 758, 764 (4th Cir.1993) (*quoting Herrera,* 506 U.S. at 404, 113 S.Ct. 853). "Actual innocence" is not a freestanding claim; rather, it is used to excuse a procedural error for an independent constitutional claim. *See Herrera,* 506 U.S. at 404–405, 113 S.Ct. 853.

In order to explain away the inherent differences between federal habeas claim (A) and state habeas claim VIII, discussed above, Beck contends that claim VIII was merely the unfortunate product of inartful legal drafting and was meant to be a *Jackson* claim. (Docket No. 42, at 3–4.) The record fails to support Beck's contention. In fact, in a footnote to claim VIII, Beck quite artfully explains that his "actual innocence should operate to excuse the default of any claims under *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974)."

Accordingly, the Court could find that Beck failed to exhaust claim (A) and recommend the same be dismissed with prejudice. However, during state habeas proceedings, both the Respondent and the Supreme Court of Virginia apparently treated claim VIII as something other than an excuse for procedural default. In particular, in support of his Motion to Dismiss Beck's state habeas petition, Respondent argued that claim VIII was procedur-

ally barred pursuant to *Slayton,* and the Supreme Court of Virginia found the same. Since the Respondent argued and the Supreme Court of Virginia found that claim VIII was itself procedurally barred, rather than merely an excuse for other procedural defaults, claim VIII essentially was treated as a freestanding constitutional claim.[5] Accordingly, the Court finds that claim VIII essentially was treated in state court as a claim of insufficient evidence, and, therefore, that claim (A) is exhausted.

*2. PROCEDURAL DEFAULT*

The Supreme Court of Virginia found the state corollary to federal habeas claim (A) procedurally barred pursuant to *Slayton.* Accordingly, under the adequate and independent state grounds doctrine, Beck must show cause and prejudice or actual innocence before the Court may consider claim (A) on its merits.

As to cause and prejudice, Beck offers the Court two ineffective assistance of counsel claims for "cause." First, Beck alleges a conflict of interest between him and his trial/appellate counsel. However, as Respondent properly notes, Beck failed to exhaust this ineffective assistance of counsel claim during state proceedings and it is therefore procedurally barred. *See Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (the exhaustion doctrine generally requires that a claim of ineffective assistance of counsel be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default); *accord Pruett v. Thompson,* 996 F.2d 1560, 1570 (4th Cir.1993).[6]

Second, Beck claims his trial counsel were ignorant of the law and the facts, that is, they unreasonably stipulated that the Commonwealth's proffer during the plea colloquy supported a *prima facie* case for Beck's convictions. This issue is considered by the Court in its subsequent discussion of federal habeas claim (B)(2), and is found to be without merit.

Beck also alleges "actual innocence" to excuse his procedural default of claim (A). *See generally Hoke v. Netherland,* 92 F.3d 1350, 1359 (4th Cir.1996) (*citing Sawyer v. Whitley,* 505 U.S. 333, 348, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (in order to qualify for the "actual innocence" exception, a petitioner must show by clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible for the death penalty under state law)). The thrust of Beck's argument, repeated throughout his federal habeas petition, is that a person cannot rob nor rape a dead body. Virginia law simply does not support this argument. *See Hoke,* 92 F.3d at 1362–64 (a killing before, during or after the robbery, and so closely related thereto in time, place and causal connection as to make the killing part of the same criminal enterprise as the robbery, constitutes murder in commission of a robbery within the meaning of Virginia Code § 18.2–31); *Spencer v. Commonwealth,* 238 Va. 275, 285–86, 384 S.E.2d 775 (1989) (*citing Coleman v. Commonwealth,* 226 Va. 31, 51, 307 S.E.2d 864 (1983) (when the death of the victim occurs in connection with rape, it shall be immaterial in the prosecution thereof whether the alleged rape occurred before or after the death of the victim)).

Accordingly, the Court finds claim (A) to be procedurally barred pursuant *Slayton,*

5. This could be the result of state habeas claims I and II, incorporated into claim VIII, which allude to claims of insufficient evidence.

6. The Court notes that under AEDPA, a federal court may consider an unexhausted claim on its merits, but only if it ultimately denies the same claim after such consideration. *See* 28 U.S.C. § 2254(b)(2).

and RECOMMENDS DISMISSAL of claim (A) WITH PREJUDICE.

*3. REVIEW ON THE MERITS*

Notwithstanding the above, and in consideration of the nature of the case, the Court provides the following analysis on the merits of Beck's insufficient evidence claim.

A voluntary and intelligent plea of guilty "is an admission of all the elements of a formal criminal charge," *United States v. Willis,* 992 F.2d 489, 490 (4th Cir.1993) (*quoting McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)), and constitutes an admission of all "material facts alleged in the charge," *id.* (*quoting United States v. Johnson,* 888 F.2d 1255, 1256 (8th Cir. 1989); *citing United States v. Gilliam,* 987 F.2d 1009 (4th Cir. Feb.12, 1993) (although amount of drugs was not an element of the offense, a guilty plea to an indictment charging that defendant was responsible for distributing an amount of drugs established that amount for sentencing purposes in the absence of a reservation of the right to dispute the amount)). Furthermore, a guilty plea constitutes a waiver of "the right to contest the factual merits of the charges." *Id.* (*quoting United States v. Freed,* 688 F.2d 24, 25 (6th Cir.1982)). Accordingly, when the judgment of conviction upon a plea of guilty has become final and the offender seeks to reopen the proceeding, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Willis,* 992 F.2d 489, 490 (4th Cir.1993) (*quoting United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)).

As for the *Alford* pleas entered by Beck on the charges of rape and use of a firearm during the commission of rape, the proffered evidence had to have been sufficiently strong for the Circuit Court to enter findings of guilt. Having reviewed the record before the Circuit Court, the Court finds there to have been sufficiently strong evidence to warrant the Circuit Court's acceptance of Beck's *Alford* pleas and its findings of guilt.[7]

Accordingly, pursuant to Beck's pleas before the Circuit Court of Arlington County,[8] the Court RECOMMENDS DISMISSAL of claim (A) WITH PREJUDICE on this alternative basis.

*CLAIM (B). PETITIONER'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED.*

In support of federal habeas claim (B), Beck presents two related claims of trial court error and one related claim of ineffective assistance of counsel. Each of these three related claims is considered in the order presented by Beck's federal habeas petition.

*(1). THE TRIAL COURT DID NOT ADEQUATELY INQUIRE INTO PETITIONER'S UNDERSTANDING OF THE CHARGES AGAINST HIM.*

*a. EXHAUSTION AND PROCEDURAL DEFAULT*

Beck contends, and Respondent does not dispute, that federal habeas claim

7. As for Beck's repeated argument that a person cannot rape a dead body, the Court refers Beck to its discussion of his "actual innocence" claim. *See* discussion *infra* pp. 24–25.

8. Beck's creative allegation that he did not actually plead guilty lacks merit. Notwithstanding the Plea Memorandum entered into by Beck and the plea colloquy between Beck and the Circuit Court, Beck in fact admits in his state habeas petition that he "pled guilty to all of the charges." (State Habeas Petition, at 3.)

(B)(1) was exhausted during state habeas proceedings. The record suggests that federal habeas claim (B)(1) correlates only to state habeas claim I(b), which the Supreme Court of Virginia found to be procedurally barred pursuant to *Slayton.* Accordingly, under the adequate and independent state grounds doctrine, Beck must show cause and prejudice or actual innocence before the Court may consider claim (B)(1) on its merits. Beck's argument for cause and prejudice and actual innocence essentially refers the Court back to his corresponding argument offered in federal habeas claim (A), which the Court found lacked merit. *See* discussion *infra* pp. 23–25. Accordingly, for the reasons previously stated in federal habeas claim (A), the Court RECOMMENDS DISMISSAL of claim (B)(1) WITH PREJUDICE.

*b. REVIEW ON THE MERITS*

Notwithstanding the above, and in consideration of the nature of the case, the Court provides the following analysis as to the merits of claim (B)(1).

Before accepting a plea of guilty, a trial court must be satisfied the plea is made voluntarily and intelligently. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The United States Supreme Court's admonition for state judges to exercise the utmost care "in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences," however, is silent as to the method of discharging that function. *See Wade v. Coiner,* 1059, 1060 (4th Cir. 1972). Consequently, if the record affirmatively shows the plea was intelligently and voluntarily entered, "that is enough." *Id.; see also Stokes v. Slayton,* 340 F.Supp. 190, 192 (W.D.Va.1972), *aff'd,* 473 F.2d 906 (4th Cir.1973) ("no particular ritual is required in order for the trial court to determine the plea is made voluntary and with the understanding of its nature and consequences").

In the case at bar, Beck acknowledged the following during his plea colloquy with the Circuit Court:

1. He went over the Plea Memorandum and discussed any questions with his attorneys. (Plea Transcript, May 15, 1996, at 4, 15.)
2. He went over the entire Plea Memorandum with his attorneys. *Id.*
3. He did not need any more time to discuss his Plea Memorandum with his attorneys. *Id.* at 4.
4. He is the person charged in the indictments. *Id.* at 4–8.
5. He fully understood the nature of each of the charges against him. *Id.* at 8.
6. He went over and discussed the elements of each of the charges with his attorneys. *Id.*
7. He decided for himself to enter pleas of guilty. *Id.*
8. He enters the pleas of guilty freely and voluntarily. *Id.* at 8–10.
9. He is pleading guilty because he is in fact guilty. *Id.* at 9.
10. He is entering *Alford* pleas to two charges. *Id.* at 10.
11. He understands the effects of an *Alford* plea. *Id.*
12. He decided, after discussing the matter thoroughly with his attorneys, that it was in his interest to enter *Alford* pleas. *Id.*
13. He is waiving a number of rights. *Id.* at 10–11.
14. He is waiving his right to a jury trial. *Id.* at 11.

15. He is waiving his right to remain silent. *Id.*
16. He is waiving his right to confront and cross-examine the Commonwealth's witnesses. *Id.*
17. He is waiving his right to appeal the decision of the court. *Id.*
18. He is waiving his right to a jury for the charges upon which he is entering *Alford* pleas. *Id.*
19. He is waiving his right to confront and cross-examine the Commonwealth's witnesses for the charges upon which he is entering *Alford* pleas. *Id.* at 12.
20. He is waiving his right to appeal the decision of the court for the charges upon which he is entering *Alford* pleas. *Id.*
21. He was not threatened or forced to enter the pleas. *Id.*
22. He was not made any special promises. *Id.*
23. He understands the maximum punishments. *Id.* at 12–15.
24. He is satisfied with the services of his attorneys. *Id.* at 15.
25. He fully understands the Plea Memorandum. *Id.*
26. The Plea Memorandum contains the complete understanding of everything that was agreed among him, his attorneys and the Commonwealth. *Id.*
27. He understood each question the court asked. *Id.*
28. He did not have any questions to ask the court. *Id.* at 15–16.

The plea colloquy essentially complied with and followed the Supreme Court of Virginia's suggested form of inquiry. *See* Rules of the Supreme Ct. of Va., Form 6 (suggested questions to be put by the court to an accused who has pleaded guilty (Rule 3A:8)). The Court further finds Beck's allegation that the Circuit Court's questioning was "rambling" to be frivolous.[9]

The plea colloquy between the Circuit Court and Beck, outlined above, more than satisfies concerns over whether the pleas of guilty were knowing and voluntary. *See Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (representations of defendant and findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceeding; solemn declarations in open court carry a strong presumption of verity); *Stokes,* 340 F.Supp. at 192 (in court representations from the defendant are treated as conclusive with regard to the validity of the plea; moreover, when a defendant is represented by counsel, his plea is strongly presumed to be valid in subsequent habeas proceedings.) Accordingly, the Court RECOMMENDS DISMISSAL of claim (B)(1) WITH PREJUDICE on this alternative ground.

9. As to Beck's reliance on Fed.R.Crim.P. 11, the United States Supreme Court's holding in *Boykins, supra,* did not create a rule fastening Rule 11 upon the states. As a matter of expediency and circumspection, state judges may choose to engage in the plea colloquy mandated for federal colleagues by Rule 11, but there is nothing in *Boykins* requiring them to do so. *Wade,* 468 F.2d at 1060.

Beck also claims he obviously did not understand the charges at the time of his plea in that he entered an *Alford* plea to the rape of Marks, but entered a guilty plea to the capital murder of Marks which required the element of rape. However, the indictment charging Beck with the capital murder of Marks actually alleges the murder of Marks during the commission of "robbery or attempted robbery or rape." Beck pled guilty to the robbery of Marks.

Finally, Beck's repeated allegation that he did not actually plead guilty lacks merit for the reasons state above. *See supra* note 8.

*(2). TRIAL COUNSEL WAS INEFFECTIVE IN THAT THEY FAILED TO EXPLAIN THE ELEMENTS OF THE CRIMES CHARGED AND UNREASONABLY STIPULATED TO THEIR ADMISSION.*

*a. EXHAUSTION AND PROCEDURAL DEFAULT*

Beck contends, and Respondent does not dispute, that federal habeas claim (B)(2) was exhausted during state habeas proceedings. The record suggests that federal habeas claim (B)(2) correlates only to state habeas claims III(f)(2) and III(g), which the Supreme Court of Virginia found to be procedurally barred pursuant to *Slayton* (state habeas review is barred by the failure to raise the claim at trial or on direct review). The Court is left uneasy, however, regarding the apparent extension of *Slayton* as a procedural bar to claims of ineffective assistance of counsel. *See Walker v. Mitchell,* 224 Va. 568, 570–71, 299 S.E.2d 698 (1983) (issues of ineffective assistance of counsel can be raised only in a separate habeas proceeding and not on direct appeal); *accord Hall v. Commonwealth,* 30 Va.App. 74, 82, 515 S.E.2d 343 (1999) (on direct appeal, the court considered appellant's claim that plea of guilty was involuntary based on counsel's ineffectiveness; however, the court referred to the rule in *Walker* and refused to directly rule on the claim of ineffective assistance of counsel); *see generally Fry v. Angelone,* 1998 WL 746859, 165 F.3d 18 (4th Cir. Oct. 26, 1998) (plea of guilty to capital murder; nine claims raised during state habeas proceedings, one being ineffective assistance of counsel, none of which were raised on direct appeal; the only state habeas claim not procedurally barred by *Slayton* was that alleging ineffective assistance of counsel). Accordingly, the Court will directly consider this claim of ineffective assistance of counsel on its merits.[10]

*b. REVIEW ON THE MERITS*

The thrust of claim (B)(2) is Beck's allegation that his trial counsel never fully understood the elements of the criminal charges filed against him. In particular, Beck repeatedly argues that, contrary to trial counsel's belief, a person cannot rob nor rape a dead person. It is Beck, however, and not his trial counsel, who actually misunderstands Virginia law. *See* discussion of "actual innocence" *infra* pp. 24–25.

Having found Beck's trial counsel to have understood the elements of his criminal charges, the Court is satisfied that Beck's counsel adequately explained the elements of the criminal charges to him. In fact, prior to the Circuit Court's acceptance of his pleas, Beck acknowledged under oath and in open court that he discussed the elements of each of the charges with his attorneys and that he fully understood the nature of the criminal charges.[11] (Plea Transcript, May 15, 1996, at 8.) Although Beck later filed an affidavit during state habeas proceedings recanting his in court acknowledgments, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent col-

10. In support of *Slayton* as an adequate and independent state procedural bar to this federal claim, Respondent merely quotes *Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The Court notes, however, that the federal habeas petition in that case was brought by a petitioner in federal rather than state custody.

11. Based in part on these acknowledgments, the Circuit Court found Beck's pleas to be freely, voluntarily and intelligently given. (Plea Transcript, May 15, 1996, at 16.)

lateral proceeding." *Blackledge,* 431 U.S. at 73–74, 97 S.Ct. 1621.

An affidavit provided by Beck's counsel during state habeas proceedings corroborate Beck's acknowledgments to the Circuit Court. Among other things, Beck's counsel state: (1) they discussed the guilty pleas with Beck at length; (2) they discussed the elements of all the criminal charges in detail; (3) Beck participated in the discussions about the criminal charges and asked relevant, intelligent questions; (4) they read the Plea Memorandum to Beck because of his reading difficulty; and (5) they thoroughly discussed the Plea Memorandum with Beck. (Docket No. 38, Exhibit B, at ¶¶ 13–16.)

Having found Beck's attorneys to have understood the elements of the criminal charges filed against him, the Court also is satisfied that they did not unreasonably stipulate that the evidence proffered by the Commonwealth at the time of Beck's plea made out a *prima facie* case against Beck.

Accordingly, for the reasons stated above and in consideration of *Strickland, see* discussion *infra* pp. 18–20, the Court RECOMMENDS DISMISSAL of claim (B)(2) WITH PREJUDICE.

*(3). THE TRIAL COURT ERRED IN ACCEPTING PETITIONER'S ALFORD PLEA BECAUSE IT WAS CONSTITUTIONALLY FLAWED.*

*a. EXHAUSTION AND PROCEDURAL DEFAULT.*

Beck and Respondent disagree as to whether or not federal habeas claim (B)(3) has been exhausted in state court. Although federal habeas claim (B)(3) and state habeas claim III both allege error in the trial court's acceptance of Beck's *Alford* pleas, the factual predicate for these two claims are substantially different. State habeas claim III alleges error in that the record did not provide a "strong factual basis" to support an *Alford* plea.[12] On the other hand, federal habeas claim (B)(3) alleges error in that, during the plea colloquy, the Circuit Court never asked Beck how he pleaded to any of the offenses and failed to advise Beck of his right to defend himself and maintain his innocence. Accordingly, claim (B)(3) remains unexhausted and consequently procedurally barred.[13] The Court therefore RECOMMENDS DISMISSAL of claim (B)(3) WITH PREJUDICE.[14]

*CLAIM (C). PETITIONER'S SENTENCING ABROGATED HIS CONSTITUTIONAL RIGHTS IN THAT THE TRIAL COURT DID NOT RECEIVE EVIDENCE OF PETITIONER'S PSYCHIATRIC AND EMOTIONAL DEFICITS.*

Beck divides his argument in support of federal habeas claim (C) into two parts, one alleging trial court error and the other alleging ineffective assistance of counsel. The Court considers each part individually and in the order presented in Beck's federal habeas petition.

12. The Supreme Court of Virginia dismissed this claim pursuant to *Slayton.*

13. Beck's argument to excuse this procedural default merely refers the Court back to his corresponding argument offered in federal habeas claim (A), which the Court found to lack merit.

14. Notwithstanding the procedural default, and pursuant to the review on the merits conducted in claim (B)(1) above, the Court finds the Circuit Court's plea colloquy adequate and Beck's claims to the contrary meritless.

*(1). THE TRIAL COURT FAILED TO INQUIRE INTO PETITIONER'S PSYCHIATRIC MEDICATION.*

*a. EXHAUSTION AND PROCEDURAL DEFAULT*

Beck and Respondent disagree as to whether or not federal habeas claim (C)(1) has been exhausted in state court. In his federal habeas petition, Beck contends that claim (C)(1) was raised during state habeas proceedings through claim IV(a)(1). However, state habeas claim IV(a)(1) deals solely with ineffective assistance of counsel during sentencing, not trial court error. In his reply to Respondent's Motion to Dismiss, Beck further contends that federal habeas claim (C)(1) was raised in his state habeas petition at pages 14–16 (claim I(c)), 24–25 (claim III(f)(1)), 25–26 (claim III(f)(3)), and 27–28 (claim IV(a)). However, claim I(c) deals solely with trial court error during the plea colloquy,[15] claims III(f)(1) and (3) deal solely with ineffective assistance of counsel during the plea, and claim IV(a) deals solely with ineffective assistance of counsel during sentencing. Beck may have raised the issue of psychiatric medications during state habeas proceedings, but never in the context of the trial court's failure to inquire into the same during sentencing. Accordingly, since claim (C)(1) remains unexhausted and consequently procedurally barred,[16] the Court RECOMMENDS DISMISSAL of claim (C)(1) WITH PREJUDICE.

*(2). COUNSEL FAILED TO PROVIDE THE TRIAL COURT WITH INFORMATION ENABLING IT TO INQUIRE INTO PETITIONER'S PSYCHIATRIC MEDICATION.*

*a. EXHAUSTION AND PROCEDURAL DEFAULT*

Beck contends, and Respondent does not dispute, that federal habeas claim (C)(2) was exhausted during state habeas proceedings. The record suggests that federal habeas claim (C)(2) correlates only to state habeas claim IV(a)(4), which the Supreme Court of Virginia found lacked merit. Since the Supreme Court of Virginia considered the claim on its merits, this Court provides the following analysis.

*b. REVIEW ON THE MERITS* [17]

In response to federal habeas claim (C)(2), Respondent offers an affidavit from Beck's trial counsel which previously was offered during state habeas proceedings. Their affidavit addresses the reasonableness of their alleged failure, during sentencing, to fully inform the Circuit Court of the alleged effects of Beck's psychiatric medication. In particular, Beck's trial counsel state: (1) as a result of their close contact with Beck, they found no reason to explore the issue of medication because it manifested no side effects; and (2) Dr. Nelson, a clinical psychologist and court appointed defense expert, was aware of Beck's medication and expressed no concern about any ill effects. (Docket No. 38, Exhibit B, at ¶¶ 5–7, 18.) Dr. Cornell, the Commonwealth's expert, also testified

15. Even if state habeas claim I(c) is stretched to somehow exhaust federal habeas claim (C)(1), state habeas claim I(c) was held procedurally barred pursuant to *Slayton* and Beck has offered this Court no argument to excuse the default.

16. Beck offers the Court no argument to excuse this procedural default.

17. The following analysis conforms with the standard set forth in *Strickland*. *See* discussion *infra* pp. 18–20.

during the sentencing hearing that it is "speculative to say what medication is or is not doing." (Sentencing Transcript, August 14, 1996, at 677.) Accordingly, the Court finds that Beck's trial counsel did not perform incompetently as alleged in claim (C)(2), and, therefore, RECOMMENDS DISMISSAL of claim (C)(2) WITH PREJUDICE.

The Court notes, in the alternative, that Beck also fails to adequately show prejudice as a result of the alleged incompetence. In order to demonstrate prejudice, Beck speculates that if the Circuit Court had been made fully aware of the effects of his psychiatric medication on his demeanor, then the Circuit Court would not have found him to lack remorse. However, Beck's demeanor does not appear to have been the single motivating factor in the Circuit Court's finding as to his lack of remorse. In fact, during the sentencing hearing, Beck's court appointed expert and the Commonwealth's expert both testified that Beck lacked remorse.[18] (Sentencing Hearing, August 14, 1996, at 550, 710.) Prior to imposing the death penalty, the Court also read into the record a note written by Beck while in prison:

> I feel like I did good for to kill two people. And you will get this letter when I kill myself or try to escape. And I'm sorry, but I love killing. And I'm not confused. I hate people. That I can't stand the heat or hate the human race.

(Sentencing Transcript, August 15, 1996, at 841.) Additionally, "lack of remorse" was but one of many findings which ultimately lead the Circuit Court to its holding on future dangerousness:

> This Court feels that the defendant's thoughts about escaping, his latent and uncontrolled anger and rage, his attempt to poison a fellow inmate, when viewed in light of his prior criminal history, his lack of remorse, his lack of acceptance of responsibility for the crimes, and particularly the rape, and the circumstances surrounding the current offenses for which the defendant is charged, leaves this Court to the inescapable conclusion, proven beyond a reasonable doubt by the Commonwealth, that the defendant may commit future crimes and thus poses a serious and significant continuing threat to society.

(Sentencing Transcript, August 15, 1996, at 850–51.) Accordingly, the Court finds that Beck was not prejudiced by the alleged failure of trial counsel to fully inform the Circuit Court of the alleged effects of psychiatric medication on his demeanor, and, therefore, RECOMMENDS DISMISSAL of claim (C)(2) WITH PREJUDICE on this alternative ground.

*CLAIM (D). TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO REQUEST NECESSARY EXPERT ASSISTANCE PURSUANT TO AKE V. OKLAHOMA, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).*[19]

Beck divides his argument in support of federal habeas claim (D) into two parts. The Court considers each part in the order presented in Beck's federal habeas petition.

18. Beck's court appointed expert testified that Beck actually lacked the level of emotional capacity to feel remorse, or, in other words, he lacked the ability to fully appreciate how someone feels. (Sentencing Transcript, August 15, 1996, at 550.)

19. The following analysis on the merits of claim (D) conforms with the standard set forth in *Strickland*. *See* discussion *infra* pp. 18–20.

*(1). THE TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO REQUEST A PSYCHIATRIST TO EXPLAIN THE EFFECT OF PETITIONER'S MEDICATIONS TO THE COURT AND THEIR RAMIFICATIONS.*

*a. EXHAUSTION AND PROCEDURAL DEFAULT*

Beck contends, and Respondent does not dispute, that federal habeas claim (D)(1) was exhausted during state habeas proceedings. The record suggests that federal habeas claim (D)(1) correlates only to state habeas claims IV(a)(1) through (4), which the Supreme Court of Virginia found lacked merit. Since the Supreme Court of Virginia considered the state corollary to federal habeas claim (D)(1) on its merits, this Court offers the following analysis.

*b. REVIEW ON THE MERITS*

During Circuit Court proceedings, Beck's trial counsel sought the court appointment of a mental health expert. The Circuit Court accordingly appointed Dr. Nelson, a clinical psychologist. Subsequently, on a motion by Beck's counsel, the Circuit Court also appointed an additional expert to conduct neuropsychological testing. Beck now claims that his trial counsel performed ineffectively for not seeking appointment of yet another mental health expert, that being a psychiatrist, to discuss during sentencing the current and future effects of Beck's medications. Beck asserts that *Ake* mandated appointment of such a psychiatrist for the preparation of his case against the Commonwealth's case on future dangerousness.

The Court notes that, contrary to Beck's assertion, *Ake* does not literally mandate the appointment of a psychiatrist; rather, *Ake* may be satisfied by the appointment of a competent psychologist. *See Swann v. Taylor,* 1999 WL 92435, at *6, 173 F.3d 425 (4th Cir. Feb. 18, 1999) (unpublished) (*quoting Wilson v. Greene,* 155 F.3d 396, 401 (4th Cir.1998) ("holding that *Ake* requires a state to ensure that a defendant has access 'to a psychiatrist *or psychologist'* ") (emphasis included in *Swann*)). Consequently, in conformity with *Ake,* Beck's trial counsel sought and received the appointment of a competent clinical psychologist, Dr. Nelson.[20]

Having been granted the appointment of a competent psychologist, Beck's trial counsel chose not to seek the appointment of yet another mental health expert, that is, a psychiatrist. This choice was explained by trial counsel in an affidavit provided during both state and federal habeas proceedings, which states, in part: (1) Beck was not adversely affected by his medications based on their observations and contact; (2) Beck's behavior, mood and ability to work was consistently ordinary; (3) Dr. Nelson, a clinical psychologist, was aware of Beck's medications and competent to observe the effects of medication; (4) Dr. Nelson was not concerned

**20.** Beck alleges that Dr. Nelson lacked the qualifications to address the effects of Beck's medication merely because, as a psychologist, he could not prescribe such medication. The Court finds Beck's allegation to be without merit. *See generally Swann,* 1999 WL 92435, at *7, 173 F.3d 425 (finding no basis to conclude the clinical psychologist lacked the qualifications to testify as to the effects of medication). The Court also notes that, during the sentencing hearing, Dr. Nelson in fact testified in his expert capacity as to the availability of medication that might assist Beck with his difficulties of impulsivity and limited attention span. (Sentencing Transcript, August 14, 1996, at 529, 532.)

about the effects of the medication; and (5) Beck exhibited no signs of confusion or disorientation; rather, he complained of only an upset stomach and some sleepiness after taking his medications. (Docket No. 38, Exhibit B, at ¶¶ 7, 18.)

The Court accordingly finds that Beck's trial counsel did not perform incompetently by failing to seek appointment of a psychiatrist to explain the current and future effects of Beck's medication to the Circuit Court, and, therefore, RECOMMENDS DISMISSAL of claim (D)(1) WITH PREJUDICE.

The Court notes, in the alternative, that Beck also fails to adequately show prejudice as a result of the alleged incompetence. In order to demonstrate prejudice, Beck speculates that without the testimony of a psychiatrist the Circuit Court was not able to accurately judge the effects of his medication, resulting in the Circuit Court's finding of lack of remorse. However, as the Court discussed above, *see* discussion *infra* pp. 39–40, the Circuit Court's finding of lack of remorse was adequately motivated by multiple factors, including: (1) the expert testimony of both Dr. Nelson and the Commonwealth's expert, and (2) the note written by Beck while in prison. Additionally, as noted earlier, "lack of remorse" was but one of many findings which led the Circuit Court to its holding on future dangerousness. Accordingly, the Court finds that Beck's allegation of prejudice resulting from counsel's alleged incompetence lacks merit, and, therefore, RECOMMENDS DISMISSAL of claim (D)(1) WITH PREJUDICE on this alternative ground.

### *(2). THE TRIAL COUNSEL FAILED TO PURSUE THE ISSUES OF PETITIONER'S BRAIN DAMAGE.*

#### *a. EXHAUSTION AND PROCEDURAL DEFAULT*

Beck contends, and Respondent does not dispute, that federal habeas claim (D)(2) was exhausted during state habeas proceedings. Beck refers to state habeas claim IV(a) as having exhausted federal habeas claim (D)(2), but state habeas claim IV(a) makes no mention of trial counsel's alleged failure to pursue Beck's brain damage. The record suggests, however, that federal habeas claim (D)(2) essentially was raised through state habeas claim IV(b), paragraphs 90 through 92.[21] Since the Supreme Court of Virginia considered state habeas claim IV(b) on its merits, this Court provides the following analysis.

#### *b. REVIEW ON THE MERITS*

Dr. Sydnor–Greenberg, clinical psychologist and court appointed defense expert, performed a neuropsychological examination on Beck. Following this examination, Dr. Sydnor–Greenberg prepared a neuropsychological report detailing his findings. His findings included signs of an attention deficit hyperactivity disorder ("ADHD") and a learning disability. Dr. Sydnor–Greenberg opined that literature suggests the ADHD and the learning disability result from a subtle brain dysfunction.

The neuropsychological report was used as a source of information by Dr. Nelson, a clinical psychologist and court appointed defense expert, in preparing his

21. The Court notes the issue also was raised in state habeas claim III(d), but only as support for a claim of ineffective assistance of counsel during Beck's plea. In contrast, federal habeas claim (D)(2) raises this issue as support for a claim of ineffective assistance of counsel during Beck's sentencing.

own capital sentencing evaluation. Dr. Nelson then testified as to his findings during the sentencing hearing. During his testimony at sentencing, Dr. Nelson discussed Beck's learning disability at length. (Sentencing Transcript, August 14, 1996, at 520–24.) Dr. Nelson also discussed Beck's demonstration of signs and symptoms of ADHD, as well as available medications to treat adults with ADHD. *Id.* at 527, 529. Accordingly, evidence of the signs of ADHD and the learning disability exhibited by Beck were before the Circuit Court at the time of sentencing.

Additionally, as to Beck's allegation that he was "becoming increasingly mentally ill" during Circuit Court proceedings, the Court again refers to his trial counsel's affidavit provided during both state and federal habeas proceedings. In the affidavit, trial counsel state, in part, that throughout their contacts with Beck, "his behavior, mood, and ability to work with [them] was consistent and consistently ordinary." (Docket No. 38, Exhibit B, at ¶ 18.)

Accordingly, the Court finds that Beck's trial counsel were not incompetent for an alleged failure to pursue the issues of brain damage during sentencing, and, therefore, RECOMMENDS DISMISSAL of claim (D)(2) WITH PREJUDICE.

The Court notes, in the alternative, that Beck also fails to adequately show prejudice as a result of the alleged incompetence. In order to demonstrate prejudice, Beck again refers to the Circuit Court's finding of his lack of remorse. The Court notes that it has dealt with this same issue in claims (C)(2) and (D)(1). Accordingly, for the reasons previously stated, the Court RECOMMENDS DISMISSAL of claim (D)(2) WITH PREJUDICE on this alternative ground.

*CLAIM (E). PETITIONER WAS INCOMPETENT TO APPEAR IN COURT AND PARTICIPATE IN THE PROCEEDINGS ON MAY 15, 1996, AND AT THE SENTENCING PROCEEDINGS; AND COUNSEL WAS INEFFECTIVE IN NOT BRINGING THIS TO THE COURT'S ATTENTION AND REQUESTING A COMPETENCY HEARING; AND THE COURT DID NOT HOLD THE REQUIRED HEARING.*

Beck summarily presents the Court with multiple issues in this, his final claim. The Court will first consider whether each issue has been properly exhausted in state court.

*1. EXHAUSTION AND PROCEDURAL DEFAULT*

Beck contends that each of the issues presented in claim (E) was exhausted during state habeas proceedings, specifically through claims I(a) and III(a). The Court does not entirely agree.

First, the issue of Beck's competency during both his plea and sentencing hearings was not raised during state court proceedings; rather, Beck only raised issues of trial counsel and trial court failure to properly investigate his competency. In fact, Beck all but admitted during state habeas proceedings of raising no such claim of actual incompetence. *See* Petitioner's Opposition to Motion to Dismiss, at 5 ("An after the fact determination of Petitioner's competency at the time of trial is impossible." (citations omitted)). Accordingly, the Court finds the specific issue of Beck's actual competency unexhausted and therefore procedurally barred, and RECOMMENDS DISMISSAL of the issue WITH PREJUDICE.

Second, the record suggests that the issue of trial counsel's failure to inform the Circuit Court of Beck's alleged incompetence was exhausted through state habeas claim III(a). Although the Supreme Court of Virginia dismissed claim III(a) pursuant to a procedural default, for the reasons set forth in the Court's discussion of federal habeas claim (B)(2), *see* discussion *infra* pp. 32–33, the Court will consider the issue on its merits.

Third, the record suggests the issue of trial court failure to raise the issue of Beck's alleged incompetence *sua sponte* was exhausted through state habeas claim I(a). The Supreme Court of Virginia dismissed claim I(a) pursuant to a procedural default. Accordingly, for reasons similar to those set forth in the Court's discussion of procedural default in federal habeas claim (B)(1), *see* discussion *infra* pp. 27–28, the Court finds the specific issue of trial court error procedurally barred and RECOMMENDS DISMISSAL of the issue WITH PREJUDICE.[22]

*2. REVIEW ON THE MERITS.*

In support of the merits of claim (E), Beck, in less than one page, summarily refers to the entirety of his federal habeas petition and his allegedly non-responsive answers during the plea colloquy. The Court, having recommended the dismissal of the foregoing claims in Beck's federal habeas petition[23] and finding Beck's answers during the plea colloquy to be sufficiently responsive, accordingly, RECOMMENDS DISMISSAL of claim (E) WITH PREJUDICE.

*V. RECOMMENDATION*

For the reasons stated above, the Court RECOMMENDS the petition be DENIED, the Respondent's Motion to Dismiss be GRANTED, and all of Beck's claims be DISMISSED WITH PREJUDICE. No evidentiary hearing is required since the record before the Court adequately resolved the legal issues raised by Beck, accordingly, the Court RECOMMENDS Beck's Renewed Request for a Hearing be DENIED. Finally, for the reasons set forth in this Report and Recommendation, the Court RECOMMENDS that no certificate of appealability be issued pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

*VI. REVIEW PROCEDURE*

By copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e). A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.

2. A District Court Judge shall make a *de novo* review of those portions of this Report and Recommendation to which spe-

22. Notwithstanding the procedural default, and pursuant to the following review on the merits, the Court, in the alternative, finds the issue of trial court error to lack merit.

23. In particular, the Court notes its findings in claim (B) concerning Beck's knowing entry of his plea. *See generally United States v. Truglio,* 493 F.2d 574, 578 (4th Cir.1974) (in order to show incompetence to plead guilty, a defendant must demonstrate that "his mental faculties were so impaired ... that he was incapable of full understanding and appreciation of the charges against him or comprehending his constitutional rights and of realizing the consequences of the plea").

cific objection is made. Fed.R.Civ.P. 72(b).

The parties are further notified that failure to file specific and timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Carr v. Hutto,* 737 F.2d 433 (4th Cir.1984).